2013 OK 14

STATE of Oklahoma, ex rel., BOARD OF REGENTS OF the UNIVERSITY OF OKLAHOMA, ex rel., Campus Disciplinary Council of the University of Oklahoma, Petitioner,

v.

The Honorable Tom A. LUCAS, District Judge of the District Court of Cleveland County, Respondent,

and

Frank George, Real Party In Interest.

No. 110,283.

Supreme Court of Oklahoma.

March 5, 2013.

Samuel L. Talley, Douglas S. Crowder, Talley, Crowder & Talley, Norman, Oklahoma, for Plaintiff/Respondent.

Shawnae E. Robey, Julia H. Messitte. Office of Legal Counsel, University of Oklahoma, Norman, Oklahoma, for Defendant/Petitioner.

EDMONDSON, J.

¶ 1 This proceeding was commenced in the District Court as an administrative appeal from student disciplinary proceedings at the University of Oklahoma. We conclude that the District Court lacked administrative appellate jurisdiction and direct the District Court to dismiss the administrative appeal. We do not resolve the claims by the student that the University failed to use the constitutionally proper procedures for imposing discipline on him. These claims were not adjudicated by the District Court, and we conclude that students have available District Court remedies for constitutionally improper student discipline when the Oklahoma Administrative Procedures Act does not provide them with an administrative appeal. Be-

cause the controversy is improperly before us on a discretionary petition for certiorari, we recast that petition to an application to assume original jurisdiction and a discretionary petition for a writ of prohibition, and we direct the Clerk of this Court to correct the style of the proceeding on the docket of this Court.[1]

¶ 2 Frank George, a student at the University of Oklahoma (University), was charged by the University with violating five provisions of the University's student code. The Campus Disciplinary Board (CDB) found that he was guilty of violating three provisions of the Code: 16.4 (Failing to Comply with Directions of Institutional Officials), 16.65 (Public Drunkenness), and 16.25 (Violating Applicable Local, State, or Federal Laws). He appealed to the University's Campus Disciplinary Council (CDC) and alleged that the evidence was insufficient for the administrative decisions that the student code had been violated. The CDC "invited Mr. George to provide a written submission regarding the insufficiency of the evidence, and invited the University to respond." Petition for Review, Plaintiff's Exhibit 2, pp. 1, 10. The CDC reviewed the statements of the witnesses and the student, and in its written decision concluded that the student had failed to meet his burden to show that the evidence against him was insufficient. The decision of the CDB was sustained by the CDC.

¶ 3 George filed a petition for review in the District Court of Cleveland County seeking administrative appellate review of a final agency decision. The University filed a motion to dismiss with two attached exhibits and raised insufficiency of service of process and lack of jurisdiction pursuant 75 O.S.2011 § 250.4(B)(12), a provision of the Oklahoma Administrative Procedures Act.

---

1. We direct the Clerk of this Court to correct the style of this proceeding on the docket of this Court *from* the style used in the certiorari proceeding: Frank George, Plaintiff/Respondent v. State of Oklahoma, ex rel., Board of Regents of the University of Oklahoma, ex rel., Campus Disciplinary Council of the University of Oklahoma, Defendant/Petitioner, *to the correct style for an* original jurisdiction supervisory writ proceeding: State of Oklahoma, *ex rel.,* Board of Regents of the University of Oklahoma, *ex rel.,* Campus Disciplinary Council of the University of Oklahoma, Petitioner v. The Honorable Tom A. Lucas, District Judge, Respondent, and Frank George, Real Party In Interest.

¶ 4 George responded to the motion to dismiss. He argued that: (1) Prior to the CDB hearing the written notice of the University stating George's code violations did not explain to him with sufficient specificity why he was charged with the code violations; (2) The notice did not give notice to him that he was being prosecuted for possession of a false identification card or possessing alcohol under the legal age for possession; (3) He was not given notice of rights to review and appeal; (4) The only testimony against him at the CDB hearing was from a University of Oklahoma Police Officer; (5) Written statements of officers not present at the hearing were considered by the CDB; (6) George informed the University that he expected all witnesses to be used against him to be present at his hearing; and (7) University counsel advised the CDB and another lawyer employed by University prosecuted George. George appealed the adverse decision of the CDB to the CDC, and then the adverse decision of the CDC to the District Court. George then argued that his allegations of violations of due process demonstrated that the District Court had appellate jurisdiction of the decision made by the University's Campus Disciplinary Council.

¶ 5 The University filed a reply with three additional attached exhibits and argued that the appellate jurisdiction of the District Court was not based upon whether George had alleged due process violations, but whether the Administrative Procedures Act provided for appellate jurisdiction. The District Court denied the motion to dismiss. The University sought review in this Court by a petition for certiorari and the request for review was granted.

## I. Petition for Certiorari to Review of Certified Interlocutory Order Recast to Petition to Assume Original Jurisdiction and Issue Prohibition

¶ 6 The order in the District Court before us on review is titled "Final Judgment." However, it is an interlocutory order anterior to judgment and the order is neither final nor a judgment.[2] The trial judge certified his nonfinal ruling for discretionary appellate review under the provisions of 12 O.S.2011 § 952(b)(3) and Supreme Court Rule 1.50.[3] The provisions of § 952(b)(3) *plainly require* that the interlocutory order certified for our review *affect a substantial part of the*

2. First, the order does not finally adjudicate the *merits* the action presented by the parties and is thus not a judgment. 12 O.S.2011 § 681; *Clay v. Independent School Dist. No. 1 of Tulsa Cnty.,* 1997 OK 13, 935 P.2d 294, 298 (A judgment is the final determination of the rights of the parties in an action.); *State ex rel. Oklahoma Bd. of Medical Licensure and Supervision v. Pinaroc,* 2002 OK 20, n. 5, 46 P.3d 114, 118 ("An interlocutory order is an order which is not 'final', does not culminate in a judgment, leaves the parties before the tribunal to try the issues on the merits, and may not be appealed unless authorized by statute.").

Second, the order fails to satisfy 12 O.S. § 953 finality in that the order does not determine an action and prevent a judgment, and it is not an order affecting a substantial right made in a special proceeding or upon summary application after judgment.

Title 12 O.S.2011 § 953 provides:

An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding or upon a summary application in an action after judgment, is a final order, which may be vacated, modified or reversed, as provided in this article.

3. 12 O.S.2011 § 952(b)(3):

(b) The Supreme Court may reverse, vacate or modify any of the following orders of the district court, or a judge thereof: ...

3. Any other order, which affects a substantial part of the merits of the controversy when the trial judge certifies that an immediate appeal may materially advance the ultimate termination of the litigation; provided, however, that the Supreme Court, in its discretion, may refuse to hear the appeal ...

Oklahoma Supreme Court Rule 1.50 provides:

"Any interlocutory order not appealable by right under the statutes, which order affects a substantial part of the merits of the controversy, may be brought for review to this Court in compliance with the rules in this Part when the trial judge or the judge's successor has certified that an immediate appeal from that order may materially advance the ultimate termination of the litigation. In the exercise of its statutory discretion this Court may refuse to review a certified interlocutory order. 12 O.S.2011 § 952, Subdiv. (b)(3).

No certified interlocutory order shall be considered if taken from an order overruling a motion for summary judgment. See Rule 1.40 for the application of other rules to review of a certified interlocutory order."

*merits of the controversy.*" *City of Lawton v. Intern. Union of Police,* 2002 OK 1, n. 27, 41 P.3d 371, 376 (emphasis added). The requirement that the order affect a substantial part of the merits of the controversy is a statutory limitation on our certiorari power to review pursuant to § 952(b)(3). In *Ward Petroleum Corp. v. Stewart,* 2003 OK 11, 64 P.3d 1113, we stated that "Our power to review certified orders is limited to those involving issues which affect a substantial part of the merits of a controversy." *Id.* at ¶ 1, 64 P.3d at 1114.

■ ¶ 7 The claim made by the University was that the District Court was without *subject matter* appellate *jurisdiction.* This Court has examined jurisdictional claims within certiorari review of a certified interlocutory order without commenting on whether the jurisdictional claims involved the

merits of the controversies.[4] However, a claim based upon a lack of jurisdiction is usually considered to be a claim *not* affecting the merits of the controversy.[5] If we consider George's claims as *solely* jurisdictional, then the issue to be reviewed is not on the merits of the controversy and certiorari review is improper.

¶ 8 Our opinions have indicated that it is possible for a jurisdictional issue to be intertwined with an issue on the merits of a controversy,[6] and for a challenge to subject matter jurisdiction to include a challenge on the merits of a controversy.[7] Federal courts have explained that a jurisdictional issue is intertwined with the merits when the subject matter jurisdiction is dependent upon a issue that is also an element to the merits of the cause of action, and the adjudication of the jurisdictional issue necessarily adjudicates a cause of action or defense thereto.[8] A simi-

4. In the context of this Court's review of certified interlocutory orders, this Court has addressed questions relating to jurisdiction. *See, e.g., Rogers v. Quiktrip Corp.,* 2010 OK 3, ¶ 3, 230 P.3d 853, (The issue presented by the parties was whether a District Court or the Corporation Commission had jurisdiction over the dispute.); *Cossey v. Cherokee Nation Enterprises, LLC,* 2009 OK 6, ¶ 38, 212 P.3d 447, 460 (Court held that an Oklahoma District Court was a "court of competent jurisdiction" to hear the controversy.); *State ex rel. Oklahoma Tax Commission v. Texaco,* 2005 OK 52, n. 5, 131 P.3d 705, 709 ("In this opinion, we only determine that the OTC plead allegations sufficient to invoke the jurisdiction of the district court based on false or fraudulent tax reports.").

5. *Ricks Exploration Co. v. Oklahoma Water Resources Bd.,* 1984 OK 73, 695 P.2d 498, 502 (In *Ricks* we stated that a District Court's dismissal of a controversy for lack of jurisdiction "will stand terminated by a decision *dehors* the merits of the case."); *Swan v. Sargent Industries,* 1980 OK CIV APP 49, 620 P.2d 473 (approved for publication by Supreme Court), (earlier dismissal for want of personal jurisdiction over a defendant does not preclude a subsequent litigation on the merits before a court of competent jurisdiction, although it does bar a retender upon the same issue of personal jurisdiction). *Cf. Samson Resources Co. v. Newfield Exploration Mid–Continent, Inc.,* 2012 OK 68, ¶ 15, 281 P.3d 1278, 1283 ("While we express no view on the merits of Samson's claims, the district court erred by dismissing the case for lack of subject matter jurisdiction.").

This view is also consistent with our opinions explaining that an adjudication on a jurisdictional claim is not usually considered as an adjudication on the merits of the controversy when the

plea of res judicata (claim preclusion) is made. *Dearing v. State ex rel. Comr's of the Land Office,* 1991 OK 6, n. 5, 808 P.2d 661, 665 (A plea of res judicata is based upon a judgment that was rendered on the merits of the case and not upon purely technical grounds.) citing, *Powell v. Chastain,* 1961 OK 28, 359 P.2d 336, 340 ("A judgment upon a demurrer which is based upon formal or technical defects of pleadings, a lack of jurisdiction, a mis-joinder of parties, or the like, as it does not involve the merits of the controversy, cannot be made available as res judicata."). *Cf. Read v. Read,* 2001 OK 87, n. 18 57 P.3d 561, 567 (Court explained res judicata as claim preclusion based upon a final judgment on the merits.).

6. *Powers v. District Court of Tulsa County,* 2009 OK 91, ¶ 6, 227 P.3d 1060, 1067.

7. *Colton v. Huntleigh USA Corp.,* 2005 OK 46, ¶¶ 9–11, 121 P.3d 1070, 1073.

8. *Holt v. U.S.,* 46 F.3d 1000, 1003 (10th Cir. 1995) (The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.); *Wheeler v. Hurdman,* 825 F.2d 257, 259 (10th Cir.), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987) ("When subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case, the jurisdictional claim and the merits are considered to be intertwined."). One of the examples cited in *Wheeler, supra,* is *Clark v. Tarrant County, Texas,* 798 F.2d 736 (5th Cir.1986), where Title VII [42 U.S.C. § 2000e] provided subject matter jurisdiction in a District Court as

lar circumstance occurred in *Flick v. Crouch*, 1967 OK 131, 434 P.2d 256, where we explained that an adjudication by a District Court of a party's status as an employee would determine whether a District Court or the State Industrial Court had jurisdiction, and a defendant's plea raising that status "goes to the merits." *Id.* 434 P.2d at 261.

¶ 9 The method of review herein is by certiorari to review a certified interlocutory order. In federal courts, when a motion to dismiss for lack of jurisdiction is intertwined with the merits of the controversy the court is required to convert the motion to dismiss into either (1) a motion to dismiss for failure to state a claim upon which relief may be granted [Federal Rule 12(b)(6) motion], or (2) a motion for summary judgment [Federal Rule 56 motion].[9] The University attached a total of five exhibits to its motion to dismiss and subsequent reply filed in the District Court. One of the exhibits was an "Acknowledgment of Rights" allegedly provided to George by the University, and it was cited by the University for the purpose of showing that George was notified of his right to appeal, and was arguably provided with an element of due process. George's claim in the District Court was based upon allegations of denial of due process, and the University's exhibit addressed that claim. The University's jurisdictional argument was intertwined with an argument on the merits of George's claims that due process required administrative appellate jurisdiction of the District Court.

■ ¶ 10 When the University's motion raising a jurisdictional issue is construed to be *intertwined on the merits* of George's claims, then the University's motion to dismiss (with reply) should be deemed to be a motion for summary judgment.[10] The University's motion for summary judgment was denied. A trial court's order that denies a motion for summary judgment *is not subject to certiorari review pursuant to § 952(b)(3)* because "No certified interlocutory order shall be considered if taken from an order overruling a motion for summary judgment." Okla.Sup.Ct.R. 1.50. Although the parties and the trial court did not treat University's motion as one for summary judgment presenting both jurisdictional and merits-based claims arguments, we treat the order as one denying summary judgment.

¶ 11 In summary, if the University's claim is jurisdictional then the order adjudicating that claim is not on the merits, and the order is thus not a certified interlocutory order that qualifies for a § 952(b)(3) review. On

---

well as defining such claims, and the issues involved whether the plaintiffs were "employees" for a Title VII cause of action and if the District Court possessed Title VII jurisdiction.

9. *Powers v. District Court of Tulsa County,* 2009 OK 91, ¶ 6, 227 P.3d 1060, 1067 ("When facts outside of the pleadings are submitted on the issue of *in personam* jurisdiction, a motion to dismiss is not converted to a motion for summary judgment unless resolution of the jurisdictional question is intertwined with the merits of the cause of action.). *See also Holt v. U.S.,* 46 F.3d 1000, 1003 (10th Cir.1995); *Redmon v. United States,* 934 F.2d 1151, 1155 (10th Cir. 1991); *Wheeler v. Hurdman,* 825 F.2d 257, 259 (10th Cir.), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987).

10. In *State ex rel. Wright v. Corporation Commission,* 2007 OK 73, ¶ 48, 170 P.3d 1024, 1039, this Court stated that it "has consistently stated that a motion to dismiss for failure to state a claim upon which relief may be granted, as provided by 12 O.S.2001 § 2012(B)(6), is to be treated as a motion for summary judgment when matters outside of the pleadings are presented in support of the motion and those extra-pled matters are not excluded by the trial court when the motion is considered."

Conversion of a motion to dismiss with a jurisdictional claim intertwined with *a claim on the merits* of the controversy would *appear* to require conversion of such a motion to one for summary judgment for two related reasons. First, an adjudication in the form of summary judgment is on the *merits* of a controversy. See *City of Broken Arrow v. Bass Pro Outdoor World, L.L.C.,* 2011 OK 1, n. 2, 250 P.3d 305, 310, citing, *Union Oil Company v. Board of Equalization,* 1996 OK 40, 913 P.2d 1330, 1334, for the proposition that granting a summary judgment motion is an adjudication *on the merits of a cause of action.* Second, a moving party's burden changes when a motion to dismiss that addresses the merits of a claim (or cause of action) is converted to a motion for summary judgment, *State ex rel. Wright, supra,* at ¶ 48. Thus, if a motion raises both jurisdiction and a § 2012(B)(6) failure to state a claim, and motion relies upon extra-pleading facts, then the jurisdiction/merits motion is converted to one for summary judgment with the respective procedural and substantive burdens placed upon the parties for such a motion.

the other hand, when the University's jurisdictional claim involves the merits of the controversy and it was denied by the trial court, then such denial does not create a certified interlocutory order subject to § 952(b)(3) review. Statutory certiorari review is thus improper in this case.

■■■ ¶ 12 The University makes a claim challenging the District Court's jurisdiction. The remedies provided by this Court's *constitutional* supervisory writs may be used to challenge the exercise of jurisdiction by a District Court. The constitutional supervisory writ of prohibition is often used for a jurisdictional challenge.[11] In *Ward Petroleum Corp. v. Stewart, supra,* we explained that "Because the issue as certified cannot be considered to be 'on the merits of the controversy', we hereby recast the petition for certiorari into a proceeding for a writ of prohibition." *Ward,* 2003 OK 11, at ¶ 1, 64 P.3d at 1114. We similarly recast George's petition for certiorari to an application to assume original jurisdiction and petition to issue prohibition. We assume original jurisdiction pursuant to Okla. Const. Art. 7, § 4 to address an issue of first impression, the question of how a public University's disciplinary proceedings relate to Oklahoma's Administrative Procedures Act and the nature of judicial review available for a student challenging his or her disciplinary proceeding.

¶ 13 We treat the University's motion for summary judgment as raising both jurisdictional and non-jurisdictional claims. We grant prohibition to prevent enforcement of the District Court's order that denied the University's motion for summary judgment *on the jurisdictional issue that the trial court lacked Administrative Procedures Act appellate jurisdiction.* We make no adjudication on other claims intertwined with this jurisdictional issue, including any claim on the merits or defense raised by the parties. Our opinion herein addresses the parties' issues necessary to adjudicate whether the District Court possesses *appellate* jurisdiction. Pursuant to issuance of the writ, we further direct the District Court to dismiss George's Administrative Procedures Act appeal in that court, but we make no adjudication on the jurisdiction of the District Court relating to George or the University which may arise from any source other than Oklahoma's Administrative Procedures Act.

## II. Administrative Appellate Jurisdiction of the District Court and the Remedy of an Independent Civil Action

¶ 14 The Administrative Procedures Act is composed of two Articles. Article I of the Act relates to state agency filing and publication requirements for rules, and Article II relates to agency notice and hearing requirements for individual proceedings.[12] Any par-

11. *S.W. v. Duncan,* 2001 OK 39, ¶ 13, 24 P.3d 846, 850 ("We also recognize that prohibition is a proper remedy to prevent an inferior court from proceeding in a cause without authority or in excess of its jurisdiction."); *State v. Dixon,* 1996 OK 15, 912 P.2d 842, 843 ("Petition for writ of prohibition or mandamus is appropriate to challenge the subject matter jurisdiction of the district court."); *Crescent Corp. v. Martin,* 1968 OK 95, 443 P.2d 111, 114 (assuming original jurisdiction and issuing prohibition is an available discretionary remedy when a respondent court does not have *in personam* jurisdiction); *Pine v. Superior Court of Seminole County,* 1934 OK 655, 172 Okla. 70, 39 P.2d 530, 532 ("Prohibition will only lie where the lower tribunal is without jurisdiction or is about to make an unauthorized use of judicial force or power.").

Although a constitutional writ of certiorari may be used to bring up a record of an inferior court to a superior court for review of jurisdictional error, *Parmenter v. Ray,* 1916 OK 600, 58 Okla. 27, 158 P. 1183, 1184–1185, and the Court has Constitutional authority for issuing this dis-

cretionary writ in various circumstances; the Court's rules *require* the parties to prepare a record to be used for a supervisory writ proceeding, Okla.Sup.Ct.R. 1.191, and a jurisdictional challenge is more frequently sought by a request for a writ of prohibition.

12. 75 O.S.2011 § 250.1:

A. The Administrative Procedures Act shall be composed of two Articles. Sections 250, 250.1, 250.3, 250.4, 250.5 and 250.8 of this title are applicable to both Articles I and II. Article I relating to agency filing and publication requirements for rules shall consist of Sections 250.2, 250.6, 250.7 and 250.9 through 308.2 of this title and Section 5 of this act. Article II relating to agency notice and hearing requirements for individual proceedings shall consist of Sections 308a through 323 of this title.

B. Except as otherwise specifically provided in Section 250.4 of this title, all agencies shall comply with the provisions of Article I and Article II of the Administrative Procedures Act.

ty aggrieved by a final agency order in an Article II individual proceeding is entitled to certain, speedy, adequate and complete judicial review thereof pursuant to 75 O.S.2011 §§ 318, 319, 320, 321, 322 and 323.[13] George's petition in the District Court al-

**13.** 75 O.S.2011 § 318:

A. 1. Any party aggrieved by a final agency order in an individual proceeding is entitled to certain, speedy, adequate and complete judicial review thereof pursuant to the provisions of this section and Sections 319, 320, 321, 322 and 323 of this title.

2. This section shall not prevent resort to other means of review, redress, relief or trial de novo, available because of constitutional provisions.

3. Neither a motion for new trial nor an application for rehearing shall be prerequisite to secure judicial review.

B. 1. The judicial review prescribed by this section for final agency orders, as to agencies whose final agency orders are made subject to review, under constitutional or statutory provisions, by appellate proceedings in the Supreme Court of Oklahoma, shall be afforded by such proceedings taken in accordance with the procedure and under the conditions otherwise provided by law, but subject to the applicable provisions of Sections 319 through 324 of this title, and the rules of the Supreme Court.

2. In all other instances, proceedings for review shall be instituted by filing a petition, in the district court of the county in which the party seeking review resides or at the option of such party where the property interest affected is situated, naming as respondents only the agency, such other party or parties in the administrative proceeding as may be named by the petitioner or as otherwise may be allowed by law, within thirty (30) days after the appellant is notified of the final agency order as provided in Section 312 of this title.

C. Copies of the petition shall be delivered in person or mailed, postage prepaid, to the agency and all other parties of record, and proof of such delivery or mailing shall be filed in the court within ten (10) days after the filing of the petition. Any party not named as a respondent in the petition is entitled to respond within ten (10) days of receipt of service. The court, in its discretion, may permit other interested persons to intervene.

D. In any proceedings for review brought by a party aggrieved by a final agency order:

1. The agency whose final agency order was made subject to review may be entitled to recover against such aggrieved party any court costs, witness fees and reasonable attorney fees if the court determines that the proceeding brought by the party is frivolous or was brought to delay the effect of said final agency order.

2. The party aggrieved by the final agency order may be entitled to recover against such agency any court costs, witness fees, and reason-

leged that he sought review of a final agency order pursuant to 75 O.S. § 318(B)(2).

¶ 15 University argued that George's discipline was not subject to Article II, his hearing was not a § 310 hearing,[14] the ultimate

able attorney fees if the court determines that the proceeding brought by the agency is frivolous.

**14.** 75 O.S.2011 § 310:

In individual proceedings:

1. Agencies may admit and give probative effect to evidence which possesses probative value commonly accepted by reasonably prudent persons in the conduct of their affairs. They shall give effect to the rules of privilege recognized by law in respect to: self-incrimination; confidential communications between husband and wife during the subsistence of the marriage relation; communication between attorney and client, made in that relation; confessions made to a clergyman or priest in his or her professional capacity in the course of discipline enjoined by the church to which he or she belongs; communications made by a patient to a licensed practitioner of one of the healing arts with reference to any physical or supposed physical disease or of knowledge gained by a practitioner through a physical examination of a patient made in a professional capacity; records and files of any official or agency of any state or of the United States which, by any statute of a state or of the United States are made confidential and privileged. No greater exclusionary effect shall be given any such rule or privilege than would obtain in an action in court. Agencies may exclude incompetent, irrelevant, immaterial, and unduly repetitious evidence. Objections to evidentiary offers may be made and shall be noted in the record. Subject to these requirements, when a hearing will be expedited and the interests of the parties will not be prejudiced substantially, any part of the evidence may be received in written form;

2. Documentary evidence may be received in the form of copies or excerpts, if the original is not readily available. Upon request, parties shall be given an opportunity to compare the copy with the original;

3. A party may conduct cross-examinations required for a full and true disclosure of the facts;

4. Notice may be taken of judicially cognizable facts. In addition, notice may be taken of generally recognized technical or scientific facts within the agency's specialized knowledge. Parties shall be notified either before or during the hearing, or by reference in preliminary reports or otherwise, of the material noticed, including any staff memoranda or data, and they shall be afforded an opportunity to contest the material so noticed. The agency's experience, technical competence, and specialized knowledge may be utilized in the evaluation of the evidence.

decision was not a § 312 final agency order,[15] and no judicial review *pursuant to the Administrative Procedures Act* was available to George. In the present proceeding, both parties rely upon the same statute, 75 O.S. 2011 § 250.4(B)(12), for their respective claims concerning the nature of the University's proceedings involving George and the jurisdiction of the District Court:

> B. As specified, the following agencies or classes of agency activities are not required to comply with the provisions of Article II of the Administrative Procedures Act: ...
>
> 12. The Board of Regents or employees of any university, college, or other institution of higher learning, except with respect to expulsion of any student for disciplinary reasons; provided, that upon any alleged infraction by a student of rules of such institutions, with a lesser penalty than expulsion, such student shall be entitled to such due process, including notice and hearing, as may be otherwise required by law, and the following grounds of misconduct, if properly alleged in disciplinary proceedings against a student, shall be cause to be barred from the campus and be removed from any college or university-owned housing, upon conviction in a court of law:
>
> a. participation in a riot as defined by the penal code,
>
> b. possession or sale of any drugs or narcotics prohibited by the penal code, Section 1 et seq. of Title 21 of the Oklahoma Statutes, or
>
> c. willful destruction of or willful damage to state property;
>
> 75 O.S.2011 § 250.4(B)(12).

■ We first examine the plain language of the statute. If wording in a statute is plain, clear and unambiguous then the plain meaning of the words used must be judicially accepted as expressing the intent of the Legislature, and there exists no reason or justification to use interpretive devices or rules of construction to determine meaning. *Tulsa Indus. Auth. v. City of Tulsa*, 2011 OK 57, n. 6, 270 P.3d 113, 119.

¶ 16 Paragraph 12 begins with stating that The Board of Regents or employees of any university, college, or other institution of higher learning need not comply with the provisions of Article II of the Administrative Procedures Act. This language is then limited by the exception for an expulsion of any student for disciplinary reasons. The plain language of § 250.4(B)(12) states that Article II applies when the penalty of expulsion exists for charges brought against a student in a university disciplinary proceeding.

¶ 17 University argued that George was subject to censure (or reprimand), parental notification, a $150.00 administrative fee, community service, a period of probation, and a "second strike" on the University's "alcohol policy," and that these were "all off the record at graduation." University argued that the charges against George did not have an expulsion as a penalty.

¶ 18 George's brief challenged the University's statement that he was not subject to expulsion. He stated that a "third strike" on the University's Alcohol Policy results in a suspension which is an expulsion. He also

5. Any party shall at all times have the right to counsel, provided that such counsel must be duly licensed to practice law by the Supreme Court of Oklahoma, and provided further that counsel shall have the right to appear and act for and on behalf of the party represented.

6. A party may request the exclusion of witnesses to the extent and for the purposes stated in Section 2615 of Title 12 of the Oklahoma Statutes. Exclusion of a witness shall not be a violation of the Oklahoma Open Meeting Act.

15. 75 O.S.2011 § 312:

A. A final agency order adverse to a party shall:

1. Be in writing; and

2. Include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. If, in accordance with agency rules, a party submitted proposed findings of fact, the final agency order shall include a ruling upon each proposed finding.

B. Parties shall be notified either personally or by certified mail, return receipt requested, of any final agency order. Upon request, a copy of the order shall be delivered or mailed forthwith to each party and to his attorney of record.

argued, "If a semester suspension is tantamount to an expulsion within the law of this state, which it is, then of course this is an expulsion system and expulsion case where Article II applies." Respondent's Answer Brief, p. 5.

¶ 19 Historically, the terms "suspended" and "expelled" have referred to a person's status with respect to an organization where "suspended" and "expelled" have had different meanings. One difference between a suspension and an expulsion is that the former involves a temporary privation of rights and privileges where the one suspended maintains the status of a student (or continues as a member of an organization from which the person is suspended), and the latter involves a permanent privation of rights and privileges where the one expelled no longer has the status of a student (or no longer has membership in an organization from which the person is expelled).[16]

¶ 20 The University's Student Code makes a distinction between (1) a suspension, which is student's exclusion from classes and activities "for a definite period of time not to exceed two years or until the conditions which may be set forth [in the order of

suspension] are met," and (2) an expulsion, which is termination of student status for an indefinite time, and the order of expulsion may, or may not, include conditions for readmission. University's Mtn. To Dismiss, Ex. 2, O.R. at p. 29.[17] The language in the Student Code describing a *suspension* has a meaning that the student will be reinstated to full student privileges upon the happening of event, either expiration of time or fulfillment of conditions by the student. On the other hand, the language describing an expulsion has a meaning that the student has no expectation that student privileges will be restored, unless his or her particular order of expulsion expressly states conditions for reinstatement. The definitions provided for *suspension* and *expulsion* that are used in the Student Code are consistent with the historic distinction between a suspension and an expulsion. George's argument that conflates *suspension* and *expulsion* into one meaning is without merit.

¶ 21 George received discipline. He received a censure for failure to comply with the directions of an institution official. For public intoxication his deferred First Strike was revoked.[18] This meant that his new

---

16. See, for example, *Annandale Golf Club v. Smith*, 110 Cal.App.Supp. 765, 289 P. 806 (Cal.Super.A.D.1930), where the Court quoted 25 Ruling Case Law, 56, for the concept that the distinction between suspension and expulsion is frequently recognized in the bylaws of societies and clubs, where during a suspension the person remains a member, but upon expulsion the person loses membership status. 289 P. at 808. *Cf. Black's Law Dictionary*, 522, 1297 (5th ed. 1979) (*expulsion* is a permanent deprivation of membership in an organization; *suspension of right* is a partial extinguishment of a right for a time and the right is susceptible of being revived).

This distinction appears to have been used by our Court of Civil Appeals in *Mason v. State ex rel. Board of Regents of the Univ. of Okla.*, 2001 OK CIV APP 33, ¶ 16, 23 P.3d 964, 970 (released for publication by order of the Court of Civil Appeals). In *Mason*, the court assumed for the purpose of argument that a student code could create a contract between a student and the university *while the person was student*, but after the student was expelled he was no longer a party to the contract and no *new* contract-based obligations from the student code could be created because such obligations required a person's status as a student.

17. University of Oklahoma Student Code, 2010–2011, Title 17 Sanctions, 1.2.1 & 1.2.2 state:

The following sanctions may be imposed on students by the appropriate Campus Disciplinary Council or the proper administrative officials:

.1 Suspension: Exclusion from classes and other privileges or activities as set forth in the notice for a definite period of time not to exceed two years or until the conditions which may be set forth are met.

.2 Expulsion: Termination of student status for an indefinite period. The conditions of readmission, if any, shall be stated in the order of expulsion. When an offense is so severe that the University will not allow the student to re-enroll, the student will be expelled. Expulsion is not a permanent separation, but neither is a definite time set when return is expected. If a student is reinstated after an expulsion, it is only after a complete consideration of his or her case.

18. A Strike "is the University's official recognition of a student's or organization's violation of the University's alcohol policy ... A strike is a final University disciplinary action which finds the accused guilty of an alcohol related offense." University of Oklahoma Student Code, 2010–2011, Three Strikes Policy. O.R. at p. 31 A student may request that a First Strike be removed from his or her record, and some alcohol-

public intoxication offense was considered to be a Second Strike against the Alcohol Policy. He received the minimum penalties for a Second Strike against the Alcohol Policy. Those minimum penalties were listed in the Student Code as follows.

1. Parent/Guardian notification via return receipt certified mail with a follow-up telephone call.

2. A $150.00 administrative fee.

3. Satisfactorily complete an approved alcohol counseling program.

4. Satisfactorily complete 20 hours of approved community service.

5. Disciplinary Probation. The Notation of Disciplinary probation shall be removed upon graduation from the University of Oklahoma subject to completion of disciplinary sanction.

University's Mtn. To Dismiss, Ex. 2, University of Oklahoma Student Code, 2010–2011, Title 17 Sanctions, 17.4, Individual Sanctions, 2nd Offense. O.R. at p. 30.

George was also found guilty under the Student Code because he had violated a local, state, or federal law, leading to his plea of "no contest" to a charge of public intoxication that was made in the City of Norman municipal court. For this violation the Campus Disciplinary Board stated that the minimum sanctions for a Second Strike against the Alcohol Policy that George received were an adequate discipline.

¶ 22 George's probation did not expressly include a suspension from academic activities.[19] The minimum mandatory sanction imposed on George did not include a suspen-

sion. University of Oklahoma Student Code, 2010–2011, Title 17 Sanctions, 17.4. However, the University did prevent George from enrolling for the semester which followed the final decision on George's discipline. The day after he was prevented from enrolling, the District Court heard argument from George's counsel on a motion to stay enforcement of the University's sanctions. University's counsel argued that the prevention from enrollment "is standard practice" because "[i]f there are outstanding fees or unresolved business the University won't allow you to enroll." Trans. of Proceedings, Jan. 4, 2012, at p. 25. Counsel did not explain whether the bar of enrollment was due to George (1) failing to pay the administrative fee prior to enrollment, or (2) failing to pay some other type of fee, or (3) failing to complete [or enroll in] an approved alcohol counseling program, or (4) failing to complete [or enroll in] approved community service prior to enrollment, or (5) failing to perform a combination of one or more of the previous four reasons, or (6) George's noncompliance with some other requirement of the University. Counsel did not explain the exact nature of "unresolved business" that warranted barring a student from enrollment.

¶ 23 The record supplied to us contains no information on circumstances that bar a student from enrollment or how such circumstances apply in this case. This Court does not base its decision upon either unsupported statements in a brief filed in this Court or unsupported statements made in argument of counsel to the trial court.[20] Further, al-

---

related offenses: "shall be entitled to an automatic deferred first strike: minor in possession and/or public intoxication." University of Oklahoma Student Code, 2010–2011, Student Alcohol Policy O.R. at 32. The Student Alcohol Policy also states that: "To qualify for a deferral and ultimate removal of the first strike, a student must not receive any other alcohol offense for a period of twelve months ... However, if the student receives another alcohol offense of any nature, within the 12–month period, the deferral of the first strike shall be revoked and the second alcohol offense shall be considered a second strike." *Id.*

**19.** Disciplinary Probation is: "Exclusion from participation in privileged or extracurricular institution activities set forth in the notice for a

period of time specified. Other conditions of the probation may apply to any other activities of the student in the University Community, except those which would affect his or her academic pursuits." University's Mtn. To Dismiss, Ex. 2, University of Oklahoma Student Code, 2010–2011, Title 17 Sanctions, 1.4. O.R. at p. 29.

**20.** *BNSF Ry. Co. v. Bd. of Cnty. Comr's of Tulsa Cnty.*, 2011 OK CIV APP 32, ¶ 11, 250 P.3d 906, 909–910 (Approved for Publication by Supreme Court). *See also Crest Infiniti, II, LP v. Swinton*, 2007 OK 77, ¶ 10, 174 P.3d 996, 1002 (Unsworn statements of counsel in a motion do not constitute evidence.).

though George's application for a stay relied upon 75 O.S. § 319(1) & (2), no discussion occurred at the hearing on topics such as (1) the terms or conditions of a stay, if any, that would be proper for staying the University's sanctions as such related to enrollment or (2) the lack of verified statements of material fact in support of George's request for a stay as such related to enrollment.[21] This may be due to the fact that while the University initially resisted the request for a stay in its motion to dismiss, at the hearing it stated that "we would not object to staying the impositions of ..." the discipline to be imposed on George. Trans. Jan. 4, 2011, at p. 25. George's petition was verified and included attached exhibits, and the University attached exhibits to its motion to dismiss (for summary judgment) and reply. But no exhibits related to George's enrollment. Thus, there is no record before us that the University's non-suspension sanctions that were imposed on George were nevertheless imposed by the University in such a way as to *necessarily* cause an individual's expulsion. Clearly, from the record before us, George has not been expressly expelled from the University.

■ ¶ 24 George also maintained that the express language of § 250.4 required the proceeding to be subject to Article II of the Administrative Procedures Act because § 250.4 requires "due process." We again look to the language of the statute.

B. As specified, the following agencies or classes of agency activities are not required to comply with the provisions of Article II of the Administrative Procedures Act: ...

12. The Board of Regents or employees of any university, college, or other institution of higher learning, except with respect to expulsion of any student for disciplinary reasons; *provided, that upon*

*any alleged infraction by a student of rules of such institutions, with a lesser penalty than expulsion, such student shall be entitled to such due process, including notice and hearing, as may be otherwise required by law,* . . . .

75 O.S.2011 § 250.4(B)(12), in part, emphasis added.

George argued that if his penalty was considered to be less than expulsion then the disciplinary proceeding was required to comply with due process, and that such compliance required both the application of Article II to the University proceedings and the availability of a judicial remedy by appeal to a District Court.

¶ 25 University agreed that disciplinary proceedings less than expulsion must comply with due process. However, University argued that due process did not require application of Article II to the disciplinary hearings. University also argued that alleged due process violations in non-expulsion student disciplinary proceedings were subject to review by a civil action in a District Court but not by an Administrative Procedures Act appeal: "To the extent George believes he can articulate a cognizable claim for procedural and/or substantive due process violations, Oklahoma's civil procedure code, 12 Okla. Stat. §§ 1, *et seq.*, would dictate that he 'fil[e]' a petition with the court' in order to commence a civil action." Petnr's Reply Brief at p. 3.

■ ¶ 26 We first note that the statute does *not* state that upon any alleged infraction by a student of rules of an institution, with a lesser penalty than expulsion, such student shall be entitled to the procedures provided by Article II. The statute states that the student shall be given "due process, including notice and hearing, *as may be oth-*

---

**21.** 75 O.S.2011 § 319(1) & (2) states in part the following:

"(1) The filing of a proceeding for review shall not stay enforcement of the agency decision; but the agency may do so, or the reviewing court may order a stay upon such terms as it deems proper, and shall do so whenever required by subsection (2) of this section.

(2) In every proceeding in any court for the review of an order of an agency, upon the filing of an application, supported by verified statements of material fact establishing that the enforcement of the order pending final decision would result in present, continuous and irreparable impairment of the constitutional rights of the applicant, a stay of the enforcement of such order and of the accrual of penalties thereunder shall be entered upon the condition that:...."

*erwise required by law."* 75 O.S. § 250.4(B)(12), emphasis added. The phrase "including notice and hearing" refers to the phrase "due process," and the phrase "as may be otherwise required by law" refers to law *other than Article II of the Administrative Procedures Act* that requires procedures such as notice and hearing.[22] The language "as may be otherwise required by law" recognizes that procedures may arise from not only various statutory codes of procedure, but from the Due Process Clause itself.[23]

■ ¶ 27 Section § 250.4 identifies two classes of students: first, students subject to discipline of expulsion where Article II applies; and second, students subject to discipline less than expulsion where Article II does not apply. The University argued that although Article II did not apply to students subject to discipline less than expulsion, § 250.4(B)(12) recognized that they were entitled to whatever due process was required

in such cases. George argued that the language recognizing an entitlement to due process was the Legislature requiring Article II to be applied to *all* student disciplinary proceedings, both expulsion and non-expulsion proceedings. George's argument destroys the statutory distinction made between student discipline with expulsion and student discipline with non-expulsion. The plain words of a statute are deemed to express legislative authorial intent in the absence of any ambiguity in language. *Tulsa Industrial Authority v. City of Tulsa*, 2011 OK 57, ¶ 11, 270 P.3d 113, 118. Section 250.4(B)(12) is clear and a plain reading of § 250.4(B)(12) is contrary to George's argument.[24]

■ ¶ 28 George argued that judicial review *in the form of an appeal* is constitutionally required to preserve a person's rights protected by the Due Process Clauses of the State and Federal Constitutions.[25] He ar-

22. Rules of grammar are presumed to have been known to the Legislature, and a proviso in a statute is presumed to refer only to the provision to which it is attached, and is generally deemed to apply only to the clause or provision immediately preceding it. *Goodin v. Brown*, 1956 OK 242, 301 P.2d 652, 654.

23. *See, e.g., State ex rel. Oklahoma Bar Association v. Mothershed*, 2011 OK 84, ¶ 61, 264 P.3d 1197, 1220–1221, (first, rights such as notice and opportunity to be heard originated from the Due Process Clauses as applied to the lawyer's right in his or her license to practice law, and not the mere codification of those procedures in the Rules Governing Disciplinary Proceedings for lawyers; and second, while certain procedures in the "code" for disciplinary proceedings contained procedures required by due process, it was not a *code* which showed compliance with due process but particular provisions contained therein).

24. We note that George's construction of § 250.4(B)(12) would fail even if that language was ambiguous as his argument implies. This is so because George's construction takes the statutory distinction between expulsion and non-expulsion proceedings in one portion of the paragraph and negates it with language in another portion of the same paragraph when such negation is not required by the language used therein. One rule of statutory construction used with ambiguous statutory provisions is that the provisions are construed in such a manner as to render *all* of the language consistent and harmonious with intelligent effect given to all of language. *South Tulsa Citizens Coalition v. Arkansas River Bridge Authority*, 2008 OK 4, ¶ 15, 176

P.3d 1217, 1221. *See also Upton v. State ex rel. Depart. of Corrections*, 2000 OK 46, ¶ 6, 9 P.3d 84, 86–87 (when possible the Court is required to construe statutory provisions together in order to give force and effect to each); *Sharp v. Tulsa County Election Board*, 1994 OK 104, ¶ 11, 890 P.2d 836, 840 (the Court construes different provisions of statutes to make them consistent and harmonious). Application of this rule of construction would leave intact the same meaning provided by the plain meaning of the statutory language, *i.e.*, § 250.4(B)(12) distinguishes between expulsion and non-expulsion student discipline for the purpose of applying Article II.

25. Oklahoma's Due Process Clause, Okla. Const. Art. 2, § 7, is coextensive with its federal counterpart, although there may be situations in which the Oklahoma provision affords greater due process protections than its federal counterpart. *Oklahoma Corrections Professional Ass'n, Inc. v. Jackson*, 2012 OK 53, n. 13, 280 P.3d 959, 963.

Okla. Const. Art. 2, § 7 provides that: "No person shall be deprived of life, liberty, or property, without due process of law."

The United States Const., Amend. 14, provides in pertinent part:

"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws...."

gued that construing § 250.4 in a manner which denied application of Article II (with an administrative appeal) to George and leaving him with the remedy of a civil action violated the Due Process Clauses. *Assuming for the purpose of our analysis* that the Due Process Clauses apply to rights possessed by George that were affected by his disciplinary proceeding, we make the following observations. George's argument raised at least two distinct issues. The first is whether the exclusion in Article II of University disciplinary proceedings is constitutionally permissible in disciplinary proceedings where expulsion is not a penalty; second, whether a civil action is a constitutionally deficient form of judicial review of an action taken by an administrative agency, and whether judicial review *by an administrative appeal* is constitutionally necessary.

■ ¶ 29 Generally, the Due Process Clause does not by itself mandate any particular form of procedure. *Powers v. District Court of Tulsa County*, 2009 OK 91, n. 42, 227 P.3d 1060, 1074. We explained in *Wood v. Independent Sch. Dist. No. 141 of Pottawatomie County*, 1983 OK 30, 661 P.2d 892, 896, and more recently in *Daffin v. State ex rel. Dept. of Mines*, 2011 OK 22, ¶ 21, 251 P.3d 741, 748, that the United States Supreme Court, in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), established a balancing test to determine the constitutional sufficiency of the administrative procedures involved. The U.S. Supreme Court explained:

> More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *See e.g.*, *Goldberg v. Kelly*, *supra*, 397 U.S. [254] at 263–271, 90 S.Ct. [1011] at 1018–1022 [25 L.Ed.2d 287 (1970)].

*Mathews v. Eldridge*, 424 U.S. 319, 334–335, 96 S.Ct. 893, 903.

This balancing test requires consideration of the interests of George affected by the actions of the University, the risk of erroneous deprivation through the procedures used, the probable value of additional or substitute procedures, and the University's interests. George argued that application of Article II is the essential element or condition to satisfy due process. This argument that Article II is the constitutional *sine qua non* of due process is simply incorrect. George does not present any argument based upon a *Mathews* balancing analysis that District Court appellate review is *constitutionally* required.

¶ 30 George claimed that the University hearing procedure was constitutionally flawed and Article II procedures must therefore apply to correct the flaws in the procedure of the disciplinary hearing at the University. When due process is invoked, it usually is invoked to require a particular procedure and not a collection of procedures unless each and every procedure in the collection is individually required to satisfy due process. One reason for this is that the necessity for one procedure to satisfy due process does not logically show that all procedures are necessary to satisfy due process.[26] The Due Process Clause cases show this principle when they explain that a Due Process analysis is a *particularized inquiry of facts and circumstances.*[27]

¶ 31 George argued that Article II procedures must apply to correct the flaws in the

---

26. The fallacy of division occurs when one infers that an attribute of a "part" of a "whole" must necessarily exist because the "whole" has that same attribute, and fallacy of composition is that an attribute of a "whole" must exist because the attribute appears in a "part" of that whole. See *State ex rel. Oklahoma Bar Association v. Mothershed*, 2011 OK 84, n. 91, 264 P.3d 1197, 1220, citing Irving M. Copi & Carl Cohen, *Introduction to Logic*, 168–170 (11th ed. 2001) and Harry J. Gensler, *Logic: Analyzing and Appraising Arguments*, 337(1989).

27. *County of Sacramento v. Lewis*, 523 U.S. 833, 850, 118 S.Ct. 1708, 140 L.Ed.2d 1043, 1056 (1998) ("... [O]ur concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances

procedure of the disciplinary hearing at the University. He argued that 75 O.S. § 250.4 may not be construed in a manner that denies application of Article II, because such a construction *necessarily* violates Due Process. George claimed that Article II of the Administrative Procedures Act must apply to him as a member of a class where membership in the class is defined according to status as a student at a public university. George cited several opinions relating to procedural due process being required in various circumstances; but his Due Process contention that Article II must apply to him suggests an equal protection claim for uniform application of law based upon the Oklahoma Due Process Clause.[28] This Court has recognized the power of the Legislature to classify people for disparate substantive-law treatment, and *"A classification is not to be measured by whether it discriminates, but rather by whether it discriminates impermissibly or invidiously." Ross v. Peters,* 1993 OK 8, 846 P.2d 1107, 1117 (emphasis in original). George has not made any argument with authority on the issue of impermissible or invidious discrimination.

¶ 32 The language of 75 O.S.2011 § 250.4(B) lists several agencies that are not required to comply with Article II.[29] We recently said that: "Judicial review of agency/board orders is commenced in two ways: 1) pursuant to the Administrative Procedures Act (Act) which provides for review of final agency orders; or 2) circumvention of the statutory procedures only when there is a constitutional question, inadequate administrative relief, and threatened or impending irreparable injury." *Bowen v. State ex rel. Okla. Real Estate Appraiser Bd.,* 2011 OK 86, ¶ 12, 270 P.3d 133, 136–137 (notes omitted). This analysis is a usual expression for describing how judicial review of an administrative act is commenced; it recognizes that statutory procedures for review may be inadequate, and that judicial relief from an administrative act is not always based upon a plaintiff's fulfillment of an administrative procedure.

¶ 33 As a general rule and subject to some exceptions, decisions of administrative bodies, especially on questions of law, are subject to some form of judicial review.[30] In some circumstances, an administrative act is

before any abuse of power is condemned as conscience shocking.... Asserted denial is to be tested by an appraisal of the totality of facts in a given case."); *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands."); *Rogers v. Bailey,* 2011 OK 69, ¶ 19, 261 P.3d 1150, 1158 ("The Due Process Clause does not, by itself, mandate any particular form of procedure ... Due process 'is not a technical conception with a fixed content unrelated to time, place and circumstances.'... '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.); *Flandermeyer v. Bonner,* 2006 OK 87, ¶ 10, 152 P.3d 195, 199 ("Due process is flexible and calls for such procedural protections as the particular situation demands. Before a party's due process rights are violated, it must be shown that the action or error was arbitrary, oppressive and shocking to the conscience of the court."); *See also Reid v. Covert,* 354 U.S. 1, 75, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957) (Harlan, J., concurring in result) ("[T]he question of which specific safeguards of the Constitution are appropriately to be applied in a particular context ... can be reduced to the issue of what process is 'due' a defendant in the particular circumstances of a particular case").

28. Although the Oklahoma Constitution does not contain an equal protection provision like or similar to that found in its federal counterpart, this Court has explained that a functional equivalent of the equal protection guarantee of the 14th Amendment of the U.S. Constitution is part of the State's Due Process provision, Okla. Const. Art. 2, § 7. *Eastern Oklahoma Bldg. & Constr. Trades Council v. Pitts,* 2003 OK 113, ¶ 8, n. 2, 82 P.3d 1008, 1012; *Gladstone v. Bartlesville Indep. School Dist. No. 30,* 2003 OK 30, n. 15, 66 P.3d 442, 446; *Oklahoma Association for Equitable Taxation v. Oklahoma City,* 1995 OK 62, ¶ 12, 901 P.2d 800, 805.

29. For example, § 250.4 states that Article II does not apply to The Oklahoma Tax Commission, The Commission for Human Services, The Oklahoma Ordnance Works Authority, The Corporation Commission, Pardon and Parole Board, the Midwestern Oklahoma Development Authority, Grand River Dam Authority, Northeast Oklahoma Public Facilities Authority, Council on Judicial Complaints, Board of Trustees of the Oklahoma College Savings Plan, etc. 75 O.S. 2011 § 250.4(B) (1–10).

30. *Union Indemnity Co. v. Saling,* 1933 OK 481, 26 P.2d 217, 221–222 ("It may be safely stated as a general rule that the provisions of our Constitution require that the decisions of administrative

not subject to review by right, but the challenged administrative action receives other types of judicial review depending upon the nature of the claim, the litigant's interest, and the remedy sought by the litigant.[31] In some cases, legal claims against an administrative agency involve issues not cognizable by the agency, and application of the Administrative Procedures Act will not bar relief sought by a litigant in a District Court.[32] We have observed that a "serious constitutional question" would arise if a court were to construe a statute in a manner that would deny a litigant *any* judicial forum to litigate a colorable constitutional claim.[33]

¶ 34 A constitutional question would arise *if* the University made the argument that no judicial review of any nature was available to review the denial of due process rights possessed by a student in a student disciplinary hearing. But the University is *not* making the argument that judicial review of its actions is unavailable. The University's argument is that if a student is subject to discipline less than expulsion and that student's due process rights are violated, then that student may bring a civil action in a District Court alleging that the University violated the student's rights. George did not specify *any* property or liberty interest that he possesses that would be judicially unprotected if he is required to champion that interest in a District Court independent legal action instead of a District Court administrative appeal. He did not explain with legal authority how a statutory classification of those possessing due process rights in proceedings less than expulsion were *constitutionally disadvantaged* by bringing their due process claims in a District Court independent action as opposed to bringing them in a District Court administrative appeal.

boards especially on questions of law be subject to judicial review ... This rule, however, is subject to exceptions and qualifications...."). Cf. *Associated Industries of Oklahoma v. Industrial Welfare Commission,* 1939 OK 155, 185 Okla. 177, 90 P.2d 899, 901, (Syllabus by the Court), ("Due process of law requires an opportunity for judicial review of administrative orders establishing minimum wages and maximum hours of employment for the purpose of determining whether such orders are within the reasonable limits of administrative discretion and are confiscatory in their application.").

In *State ex rel. Westbrook v. Oklahoma Public Welfare Commission,* 1946 OK 95, 167 P.2d 71, 72–73, we relied upon a right-privilege dichotomy for the principle that an administrative agency may possess final authority to decide an issue without judicial review. But in *Westbrook* the Court examined the litigant's claim of arbitrary and capricious administrative conduct, and nothing in *Westbrook* precludes the idea that an opportunity for judicial review of administrative actions *must* be available for constitutional claims.

31. *See, e.g., Bird v. Willis,* 1996 OK 116, ¶ 21, 927 P.2d 547, 552 (when the Administrative Procedures Act did not provide a procedure for litigant challenging an administrative act as contrary to law, mandamus was an available remedy to (1) compel the performance of an act by a state board or agency which the law specially enjoins as a duty, and (2) for correction of an administrative official's abuse of discretion where the action is arbitrary.); *State ex rel. Tulsa Classroom Teacher's Ass'n, Inc. v. Board of Equalization,* 1979 OK 129, ¶¶ 7–8, 600 P.2d 861, 863 (Court noted that particular litigant's available remedy was mandamus and exhaustion of administrative

remedy was not required); *Bare v. Patterson,* 1948 OK 148, 200 Okla. 420, 195 P.2d 281, 283, (although mandamus would not ordinarily lie to correct errors of judgment by a board in matters within the board's jurisdiction, the Court would review a record of a board to determine is it acted beyond its jurisdiction or in excess of authority and then correct the board's decision by mandamus); *Oklahoma City Zoological Trust v. State ex rel. Public Employees Relations Bd.,* 2007 OK 21, ¶ 7, 158 P.3d 461, 464–465 ("But one need not exhaust administrative remedies where, as here, 'the power of the agency to act at all under the statutory scheme it is charged with administering' is being challenged."); *Lone Star Helicopters, Inc. v. State,* 1990 OK 111, 800 P.2d 235, 238 (the exhaustion-of-remedies doctrine was not invocable as a bar to the action for recovery of damages from breach of contract).

32. *State ex rel. Okla. Dept. of Mines v. Jackson,* 1997 OK 149, ¶ 12, 950 P.2d 306, 310 ("Because the sureties actions tender issues that are not cognizable by ODM the exhaustion-of-remedies doctrine is not invocable as a bar to their quests for declaratory relief.").

33. *Elgin v. Department of Treasury,* —— U.S. ——, 132 S.Ct. 2126, 2132, 183 L.Ed.2d 1 (2012), quoting *Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988). See also our discussion in *Mehdipour v. State ex rel. Dept. of Corrections,* 2004 OK 19, ¶¶ 8–9, 90 P.3d 546, 550, citing *Mehdipour v. Wise,* 2003 OK 3, 65 P.3d 271, and explaining that we have consistently declined to interpret our statutory provisions in a manner which would deprive prisoners access to civil judicial process.

¶ 35 This Court has long recognized that "the courts of equity are always open to afford a remedy where there is an attempt, under the guise of legal proceedings, to deprive a person of his life, liberty, or property without due process of law." [34] While equity will not be used to supplant an available, adequate, and required legal remedy for a particular circumstance,[35] in the absence of such a remedy both equitable and declaratory relief are available to prevent or remedy an unconstitutional administrative act by one aggrieved thereby. It is not a novel concept in the law to state that a remedy in the form of a civil action for a legally cognizable controversy is available when no specific administrative procedure or specific statutory procedure is provided for the circumstance.[36] For example, we recently affirmed a District Court's order issuing a temporary injunction as necessary to preserve the status quo while the plaintiff sought declaratory and injunctive relief when the injunction was based upon plaintiff's due process rights to participate in administrative proceedings with a "meaningful opportunity to be heard." *Daffin v. State ex rel. Dept. of Mines*, 2011 OK 22, ¶ 6, 251 P.3d 741, 745.

¶ 36 Our construction of § 250.4 does not deprive a litigant of a judicial forum to hear a constitutional claim challenging an administrative action. We hold that 75 O.S. § 250.4(B)(12) does not expressly provide for application of Article II of the Administrative Procedures Act when a student, like George, is subject to discipline less than expulsion for an institutional rule infraction; and that George's remedy of an independent civil action is adequate to redress any alleged violation by the University of his claimed rights to due process in the University's administrative proceedings.

## III. Due Process and Multiple Strikes Against the Alcohol Policy

¶ 37 George maintained that the automatic suspension as a penalty on a "Third Strike" was equivalent to an expulsion and Article II applied on a Third Strike. He also argued that the two proceedings culminating in the First and Second Strikes would be used as a partial basis for a Third Strike, and thus the first two administrative proceedings must be subject to Article II of the Administrative Procedure Act. The express language of § 250.4 does not make non-expulsion disciplinary proceedings subject to Article II when they are considered in a subsequent expulsion proceeding. Thus, George's argument was that *constitutional necessity* made the First and Second Strike proceedings subject to Article II.

¶ 38 In 1975 the U.S. Supreme Court determined that in the State of Ohio, on the basis of state law, primary and secondary students "had legitimate claims of entitlement to a public education … [and because statutes] direct local authorities to provide a free education to all residents between five and 21 years of age," the students thus possessed a property interest in public education; and "[h]aving chosen to extend the right to an education to people of appellees' class generally, Ohio may not withdraw that right on grounds of misconduct absent, fundamentally fair procedures to determine whether the misconduct has occurred." *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The Tenth Circuit Court of Appeals relied upon *Goss v. Lopez* when it concluded that a student at Okla-

**34.** *Kerker v. Bocher*, 1908 OK 52, 20 Okla. 729, 95 P. 981, 994 quoting with approval *French v. Barber Asphalt Pav. Co.*, 181 U.S. 324, 345, 21 S.Ct. 625, 45 L.Ed. 879 (1901).

**35.** *Tulsa Indus. Auth. v. City of Tulsa*, 2011 OK 57, n. 43, 270 P.3d 113, 125.

**36.** *See, e.g., Adair v. Clay*, 1988 OK 77, 780 P.2d 650, 654, *cert. denied*, 493 U.S. 1076, 110 S.Ct. 1125, 107 L.Ed.2d 1032 (1990) (Title 68 O.S. 1981 § 2469 [now codified at 68 O.S.2011 § 2886] provided for a direct suit for refund "[i]n all cases where the illegality of the tax is alleged to arise by reason of some action from which the laws provide no appeal."); *Macy v. Oklahoma City School District No. 89*, 1998 OK 58, ¶ 17, 961 P.2d 804, 808 (The Court noted that equity had been used in *Walker v. Oak Cliff Volunteer Fire Protection Dist.*, 1990 OK 31, ¶ 14, 807 P.2d 762, to provide a remedy for the purpose of challenging an invalid election if there was no statutory provision allowing an election contest, and if the challenge involved civil or property rights, rather than political rights.).

homa's Gordon–Cooper area Vocational–Technical School who was pursuing courses, studies and practical training in the Division of Practical Nursing at Shawnee, Oklahoma, possessed a property right protected by the Due Process Clause because of her payment of fees. *Gaspar v. Bruton*, 513 F.2d 843, 850 (10th Cir.1975).

¶ 39 Then, in *Harris v. Blake*, 798 F.2d 419 (10th Cir.1986), the Tenth Circuit Court of Appeals used the analysis applied to primary and secondary students in *Goss v. Lopez* and applied it to students of the University of Northern Colorado.

> In *Goss*, the State of Ohio had entitled its residents to a primary and secondary education. *See id.* 419 U.S. at 573, 95 S.Ct. at 735. Colorado has created the basis for a similar claim of entitlement to an education in its state college system, which includes the University of Northern Colorado. The legislature has directed that these colleges "shall be open ... to all persons resident in this state" upon payment of a reasonable tuition fee. Colo.Rev.Stat. § 23–50–109 (1973). The actual payment of tuition secures an individual's claim of entitlement. See *Gaspar*, 513 F.2d at 850. Accordingly, Harris had a property interest in his CSAP enrollment which entitled him to procedural due process.

798 F.2d at 422, note omitted.

In *Goss, Gaspar,* and *Harris,* the courts first determined whether a property right was present based upon either state statutes or the payment of fees or tuition. This burden and a party's failure to satisfy it was noted in *Board of Curators of the University of Missouri v. Horowitz,* 435 U.S. 78, 80, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), where the Court said "Because property interests are creatures of state law, ... respondent would have been required to show at trial that her seat at the Medical School was a 'property' interest recognized by Missouri state law,"

and that no showing was made by the litigant on this point. *Id.* 435 U.S. at 82, 98 S.Ct. 948.

■■■■■ ¶ 40 George relied in his brief on *Goss, Harris,* and *Gaspar* for the proposition that he possessed a property right subject to Due Process protection when he was disciplined. George's District Court filings and brief in this Court do not refer to any state statute, such as those cited in both *Goss* and *Harris,* for showing that he has a property right created by Oklahoma law. There is no allegation in George's District Court verified petition that he paid fees. George does state in his brief in this Court that he paid fees. However, a litigant may not supplement an appellate record to show a fact that is a necessary element to that party's claim or cause of action in the trial court by merely asserting that fact in his or her brief in this Court.[37] George is a student at the University of Oklahoma, and this Court may take judicial notice of state statutes relating to tuition at public universities such as 70 O.S. 2011 § 3218.8. *Keota Mills & Elevator v. Gamble,* 2010 OK 12, n. 10, 243 P.3d 1156, 1158. However, taking such judicial notice does not supply the missing fact whether George actually paid such tuition or fee, or is a student in good standing *on the basis of such payment.* In *Board of Curators of the University of Missouri v. Horowitz, supra,* the Court assumed that the respondent possessed both a property and liberty interest. *Id.* 435 U.S. at 84–85, 98 S.Ct. 948. Regardless of George's procedural deficiencies, like the court in *Horowitz* we will assume *for the purpose of George's Third–Strike argument in the matter before us* that he possessed a property right created by state law.[38] We also assume for the purpose of this argument that the Third Strike suspension is an expulsion for the purpose of § 250.4. We now turn to George's multiple-strike argument

---

**37.** An admission *against a party's interest* made in an appellate brief may be used to supplement an appellate record. *Jernigan v. Jernigan,* 2006 OK 22, n. 14, 138 P.3d 539, 545. This concept applies to briefs in extraordinary writ proceedings. *Powers v. District Court of Tulsa County,* 2009 OK 91, n. 20, 227 P.3d 1060, 1069. George's assertion of payment of a fee is not an admission against interest, and there is no dis-

cussion of George's payment of fees in University's briefs filed in this Court.

**38.** While George made claims to a property interest protected by constitutional due process, he made no claim that he was deprived of a liberty interest by the actions of the University.

¶ 41 George's brief in this Court argued that "the 'strike two' nature of the proceedings against him is a precursor event that would result in expulsion in a 'strike three' hearing" and that "by itself" makes the strike-two hearing an expulsion proceeding. Brief at p. 8. He also characterized the first two strikes as "merely steps leading to potential expulsion." Brief at n. 4. We disagree with this characterization. The first two strikes are not elements of a Third Strike offense. The Third Strike institutional rule is a method of *enhancing punishment* similar to a recidivist statute.

¶ 42 George's characterization that a no-expulsion Second Strike proceeding is constitutionally deemed, or turned into, an expulsion proceeding due to the possibility of a subsequent Third Strike expulsion proceeding is simply an incorrect concept. For example, "Enhancement statutes, ... that are commonplace in state criminal laws, do not change the penalty imposed for the earlier conviction." *Nichols v. United States*, 511 U.S. 738, 747, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994). In *Nichols* the Court also explained that consistent with the Sixth and Fourteenth Amendments an uncounseled misdemeanor conviction, valid due to absence of imposition of prison term, could be used for enhancement of punishment for a subsequent conviction where a prison term was imposed. *Id.* 511 U.S. at 746–749, 114 S.Ct. 1921. In *Nichols* the former proceeding was not required to possess all of the procedures constitutionally required for the subsequent proceeding although the punishment in the subsequent proceeding was enhanced by the conviction in the former. George's brief in this Court cites no authority in support of his argument that a prior non-expulsion offence must constitutionally be deemed to be an expulsion proceeding due to the possible threat of an enhanced-punishment subsequent offense. In the absence of any authority cited by George on this point other than the trial judge's opinion, we thus reject George's claim that the possibility of the Third Strike with an enhanced punishment constitutionally requires a Second Strike proceeding to be subject to Article II with appellate review in a District Court.

## IV. Additional Due Process Arguments

¶ 43 George argued that when the University employed one attorney to counsel the Campus Disciplinary Board and another lawyer to prosecute George for institution infractions, this conduct was an egregious violation of due process that "is inherently unfair and unconstitutional and smacks of impropriety." However, the fact that an agency participates in the investigation, prosecution and adjudication of matters before it has been held not to violate the due process clause. *State ex rel. Oklahoma Dept. of Mines v. Jackson*, 1997 OK 149, ¶ 11, 950 P.2d 306, 310. An administrative deprivation of a constitutionally protected property or liberty interest must be accomplished by an impartial and disinterested tribunal in an adjudicative process where the procedures employed are appropriate for the constitutional interest at stake. *Bowen v. State ex rel. Oklahoma Real Estate Appraiser Board*, 2011 OK 86, ¶ 12, 270 P.3d 133, 136–137. George's argument addresses whether a due process violation occurred during the University proceedings and what process George was due. It does not address whether George was entitled to an administrative appeal to the District Court. His other due process arguments also address the nature of the proceedings before the University and not a right to an administrative appeal.

¶ 44 Absent exigent and unusual circumstances not present here, in the context of original supervisory writ this Court does not make first-instance assessments of applying legal principles to facts, but allows the parties to develop issues of fact and law in the trial court.[39] The record before us affirmatively shows that the trial court adjudicated a motion involving its appellate jurisdiction. George's additional due process arguments were not adjudicated by the District Court, and we decline to adjudicate them in the first instance.

**39.** *Crest Infiniti, II, LP v. Swinton*, 2007 OK 77, n. 8, 174 P.3d 996, 1001, *Scott v. Peterson*, 2005 OK 84, ¶ 27, 126 P.3d 1232, 1240; *Christian v. Gray*, 2003 OK 10, ¶ 26, 65 P.3d 591, 604.

## V.  Conclusion

¶ 45  We hold that: (1) 75 O.S. § 250.4(B)(12) does not expressly provide for application of Article II of the Administrative Procedures Act when a student is subject to discipline less than expulsion for an institutional rule infraction; (2) the remedy of an independent District Court civil action is an adequate remedy for an alleged violation by the University of a student's rights to due process in a University disciplinary proceeding; (3) the possibility of a subsequent institutional offense that is subject to Article II of the Administrative Procedures Act having an enhanced punishment because of former offenses does not require the former offenses to be also subject to Article II of the Administrative Procedures Act; and (4) absent unusual circumstances not present here, we decline in a supervisory writ proceeding to adjudicate constitutional arguments that were not adjudicated in the District Court.

¶ 46  We assume original jurisdiction, issue prohibition to prevent enforcement of the order denying summary judgment on the sole ground that the District Court lacks appellate administrative jurisdiction, and direct the District Court to dismiss George's administrative appeal.  We decline to address the merits of George's due process claims relating to the procedures of the University.

1.  Title 75 O.S.2011 § 250.1 provides:
A.  The Administrative Procedures Act shall be composed of two Articles.  Sections 250, 250.1, 250.3, 250.4, 250.5, and 250.8 of this title are applicable to both Articles I and II.  Article I relating to agency filing and publication requirements for rules shall consist of Sections 250.2, 250.6, 250.7 and 250.9 through 308.2 of this title and Section 5 of this act.  Article II relating to agency notice and hearing requirements for individual proceedings shall consist of Sections 308a through 323 of this title.
B.  Except as otherwise specifically provided in Section 250.4 of this title, all agencies shall comply with the provisions of Article I and Article II of the Administrative Procedures Act.

2.  Title 75 O.S.2011 § 250.3 see page 4, infra.

3.  *State ex rel. Protective Health Services State Dept. of Health v. Vaughn,* 2009 OK 61, ¶ 5, fn. 10, 222 P.3d 1058.

4.  Title 75 O.S.2011 § 309 provides:

¶ 47 WATT, WINCHESTER, EDMONDSON, TAYLOR, COMBS, and GURICH, JJ., concur.

¶ 48 COLBERT, C.J., REIF, V.C.J., and KAUGER, J., dissent.

KAUGER, J., with whom COLBERT C.J., and REIF, J., join dissenting:

¶ 1  The district court seeks an answer to the following question:
Does it have jurisdiction to review a University Disciplinary Council proceeding brought against a student?
The answer is:
Yes, but not under the review proceeding provided for in the Administrative Procedure Act (APA), 75 O.S.2011 §§ 250 *et seq.*

¶ 2  Article II of the APA concerns individual proceedings.[1]  The APA defines individual proceedings as: "the formal process employed by an agency having jurisdiction by law to resolve issues of law or fact between parties and which results in the exercise of discretion of a judicial nature."[2]  Even though the individual proceedings are expressly made judicial in nature by the APA, such proceedings are generally not governed by the Rules for the District Courts.[3]

¶ 3  Rather, the APA provides detailed procedures to ensure that the same rights which are provided in district court actions are also preserved in administrative proceedings.[4]

A.  In an individual proceeding, all parties shall be afforded an opportunity for hearing after reasonable notice.
B.  The notice shall include:
1.  A statement of the time, place and nature of the hearing;
2.  A statement of the legal authority and jurisdiction under which the hearing is to be held;
3.  A reference to the particular sections of the statutes and rules involved;  and
4.  A short and plain statement of the matters asserted.  If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved.  Thereafter upon application a more definite and detailed statement shall be furnished.
C.  Opportunity shall be afforded all parties to respond and present evidence and argument on all issues involved.
D.  Deliberations by administrative heads, hearing examiners, and other persons author-

The underlying purpose of the statutory requirements regarding rulings for individual proceedings is to enable a reviewing court to intelligently examine the order of an administrative agency and ascertain if the facts and law upon which the order is based afford a reasonable basis.[5]

¶4 At issue here is 75 O.S.2011 § 250.4(B)(12) which provides in pertinent part:

B. As specified, the following agencies or classes of agency activities are not required to comply with the provisions of Article II of the Administrative Procedures Act: ...

12. The Board of Regents or employees of any university, college, or other institution of higher learning, except with respect to expulsion of any student for disciplinary reasons; provided, that upon any alleged infraction by a student of rules of such institutions, with a lesser penalty than expulsion, such student shall be entitled to such due process, including notice and hearing, as may be otherwise required by law, and the following grounds of misconduct, if properly alleged in disciplinary proceedings against a student, shall be

cause to be barred from the campus and be removed from any college or university-owned housing, upon conviction in a court of law:

a. participation in a riot as defined by the penal code,

b. possession or sale of any drugs or narcotics prohibited by the penal code, Section 1 et seq. of Title 21 of the Oklahoma Statutes, or

c. willful destruction of or willful damage to state property.

The plain language of this statute states that the University, when holding disciplinary proceedings in which expulsion is concerned, must comply with the individual proceeding requirements of the APA. However, if something less than expulsion is sought, the strict procedural strictures of individual proceedings do not apply, but due process rights such as notice and a hearing and any other rights required by law are preserved and expressly required.

¶5 Here, because expulsion was not sought, under the plain language of § 250.4(B)(12), the formalities of an individual proceeding were not required. Had they

ized by law may be held in executive session pursuant to paragraph 8 of subsection B of Section 307 of Title 25 of the Oklahoma Statutes.

E. Unless precluded by law, informal disposition may be made of any individual proceeding by stipulation, agreed settlement, consent order, or default.

F. The record in an individual proceeding shall include:

1. All pleadings, motions and intermediate rulings;

2. Evidence received or considered at the individual proceeding;

3. A statement of matters officially noticed;

4. Questions and offers of proof, objections, and rulings thereon;

5. Proposed findings and exceptions;

6. Any decision, opinion, or report by the officer presiding at the hearing; and

7. All other evidence or data submitted to the hearing examiner or administrative head in connection with their consideration of the case provided all parties have had access to such evidence.

G. Oral proceedings shall be electronically recorded. Such recordings shall be maintained for such time so as to protect the record through judicial review. Copies of the recordings shall be provided by the agency at the request of any party to the proceeding. Costs of

transcription of the recordings shall be borne by the party requesting the transcription. For judicial review, electronic recordings of an individual proceeding, as certified by the agency, may be submitted to the reviewing court by the agency as part of the record of the proceedings under review without transcription unless otherwise required to be transcribed by the reviewing court. In such case, the expense of transcriptions shall be taxed and assessed against the nonprevailing party. Parties to any proceeding may have the proceedings transcribed by a court reporter at their own expense.

H. Findings of fact shall be based exclusively on the evidence received and on matters officially noticed in the individual proceeding unless otherwise agreed upon by the parties on the record.

5. *Oklahoma Dept. of Public Safety v. McCrady*, 2007 OK 39, 176 P.3d 1194. [An agency order is subject to reversal if an appealing party's substantial rights were prejudiced because the agency's findings, inferences, conclusions, or decisions were entered in excess of its statutory authority or jurisdiction, were arbitrary or capricious, or were clearly erroneous in view of the reliable, material, probative, and substantial competent evidence].

been, 75 O.S.2011 § 318 provides for court review of the individual proceeding.[6] However, students' due process rights are expressly preserved by the APA,[7] and even if they were not, minimal due process standards are constitutionally guaranteed.[8] Section 318 also expressly provides that: "this section shall not prevent resort to other means of review, redress, relief or trial de novo, available because of constitutional provisions." [9]

¶ 6 Title 12 O.S.2011 § 951 fills in where the APA ends. It states:

a) A judgment rendered, or final order made, by any tribunal, board or officer exercising judicial functions, and inferior in jurisdiction to the district court, may be reversed, vacated or modified by the district court except where an appeal to some other court is provided by law.

(b) Unless otherwise provided by law, proceedings for review of a judgment or final

---

**6.** Title 75 O.S.2011 § 318 provides:

A.1. Any party aggrieved by a final agency order in an individual proceeding is entitled to certain, speedy, adequate and complete judicial review thereof pursuant to the provisions of this section and Sections 319, 320, 321, 322 and 323 of this title.

2. This section shall not prevent resort to other means of review, redress, relief or trial de novo, available because of constitutional provisions.

3. Neither a motion for new trial nor an application for rehearing shall be prerequisite to secure judicial review.

B. 1. The judicial review prescribed by this section for final agency orders, as to agencies whose final agency orders are made subject to review, under constitutional or statutory provisions, by appellate proceedings in the Supreme Court of Oklahoma, shall be afforded by such proceedings taken in accordance with the procedure and under the conditions otherwise provided by law, but subject to the applicable provisions of Sections 319 through 324 of this title, and the rules of the Supreme Court.

2. In all other instances, proceedings for review shall be instituted by filing a petition, in the district court of the county in which the party seeking review resides or at the option of such party where the property interest affected is situated, naming as respondents only the agency, such other party or parties in the administrative proceeding as may be named by the petitioner or as otherwise may be allowed by law, within thirty (30) days after the appellant is notified of the final agency order as provided in Section 312 of this title.

C. Copies of the petition shall be delivered in person or mailed, postage prepaid, to the agency and all other parties of record, and proof of such delivery or mailing shall be filed in the court within ten (10) days after the filing of the petition. Any party not named as a respondent in the petition is entitled to respond within ten (10) days of receipt of service. The court, in its discretion, may permit other interested persons to intervene.

D. In any proceedings for review brought by a party aggrieved by a final agency order:

1. The agency whose final agency order was made subject to review may be entitled to recover against such aggrieved party any court costs, witness fees and reasonable attorney fees if the court determines that the proceeding brought by the party is frivolous or was brought to delay the effect of said final agency order.

2. The party aggrieved by the final agency order may be entitled to recover against such agency any court costs, witness fees, and reasonable attorney fees if the court determines that the proceeding brought by the agency is frivolous.

**7.** Title 75 O.S.2011 § 250.4(B)(12), see page 4, supra.

**8.** The due process clauses of the United States and the Oklahoma Constitutions provide that certain substantive rights—life, liberty and property—cannot be deprived except by constitutionally adequate procedures. *DuLaney v. Okla. State Dept. of Health*, 1993 OK 113, ¶10, 868 P.2d 676.

U.S. Const. amend. 14, § 1 provides in pertinent part:

"... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The Okla. Const. art. 2, § 7 provides:

"No person shall be deprived of life, liberty, or property, without due process of law."

Once it is determined that due process applies, the question becomes what process is due. Here, the inquiry is answered by 75 O.S.2011 § 250.4(B)(12), page 4, supra which requires notice, hearing, and anything else required by law. In *Van Horn Oil Co. v. Okla. Corp. Com'n*, 1988 OK 42, ¶ 8, 753 P.2d 1359, the Court stated:

Procedural due process of law contemplates a fair and open hearing before a legally constituted court or other authority with notice and an opportunity to present evidence and argument, representation by counsel, if desired, and information concerning the claims of the opposing party with reasonable opportunity to controvert them.

**9.** Title 75 O.S.2011 § 318, see note 6, supra.

order shall be commenced by filing a petition in the district court of the county where the inferior tribunal, board or officer rendered the order within thirty (30) days of the date that a copy of the judgment or final order is mailed to the appellant, as shown by the certificate of mailing attached to the judgment or final order.

Here, the University's Disciplinary Council was acting as the functional equivalent of a judge in a judicial proceeding.[10] This is so because the APA expressly provides for notice, hearing, and other required due process considerations to be accommodated even when a discipline less than expulsion was sought.[11] Even if it didn't, university proceedings such as this are recognized to be quasi-judicial proceedings.[12]

¶ 7 Both the APA and § 951 apply to this cause. The district court clearly had jurisdiction to review this disciplinary proceeding. Rather than force this student to start all over, the matter should be remanded for a continuation of that review.

---

10. A quasi-judicial duty is one lying in the judgment or discretion of an officer other than a judicial officer. *Gray v. Board of County Commissioners*, 1957 OK 152, ¶ 5, 312 P.2d 959. The Board of Regents for a University has been recognized to act in a quasi-judicial capacity. *Churchill v. University of Colorado at Boulder*, 2012 CO 54, ¶ 2, 285 P.3d 986 (Colo.2012); *Miklosy v. Regents of University of California*, 44 Cal.4th 876, 188 P.3d 629, 636, 80 Cal.Rptr.3d 690 (Cal.2008). *Cherry v. Board of Regents of University of State of New York*, 289 N.Y. 148, 44 N.E.2d 405 (N.Y.1942). A private university disciplinary board as been recognized as quasi-judicial. *Rom v. Fairfield University*, 2006 WL 390448 (Conn.Super.2006). Even prison disciplinary committees have been considered quasi-judicial. *Cleavinger v. Saxner*, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). As have disciplinary proceedings for teachers. *Smith v. New York City Dept. of Edu.*, 808 F.SupP.2d 569 (S.D.N.Y.2011); *Mills v. Western Washington Univ.* 170 Wash.2d 903, 246 P.3d 1254 (2011). Some high school disciplinary proceedings have been determined to be quasi-judicial in nature. *Pangle v. Bend–Lapine School Dist.*, 169 Or.App. 376, 10 P.3d 275 (2000). Others have not. *Betts v. Board of Ed. of City of Chicago*, 466 F.2d 629 (7th Cir.1972).

The corporation commission, the industrial commission, and board of adjustment have all been recognized as acting in an adjudicative capacity as the functional analogue of a court of record with dispute resolution authority. *Van Horn Oil Co. v. Okla. Corp. Com'n*, see note 8, supra at ¶ 12; *Special Indem. Fund v. Quinalty*, 1949 OK 17, ¶ 5, 201 Okla. 204, 203 P.2d 713; *Torrance v. Bladel*, 1945 OK 41, ¶ 0, 195 Okla. 68, 155 P.2d 546. See also, the following cases in which administrative proceedings are conducted in a quasi-judicial capacity. *Baumgardner v. State ex rel. Dept. of Human Services*, 1990 OK 24, ¶¶ 6–10, 789 P.2d 235 [Ethics and Merit Commission]; *Jackson v. Indep. Sch. Dist. No. 16 of Payne Co.*, 1982 OK 74, ¶¶ 10–11, 648 P.2d 26 [School Board]; *Brown v. Banking Bd.*, 1978 OK 75, ¶ 32, 579 P.2d 1267 [Banking Board]; *Board of Examiners of Veterinary Medicine v. Mohr*, 1971 OK 64, ¶ 13, 485 P.2d 235 [Vet. Med. Bd.]; *State of Oklahoma ex rel. Oklahoma State Board of Embalmers etc. v. Guardian Funeral Home*, 1967 OK 141, ¶ 24, 429 P.2d 732 [Bd. of Embalmers]; *Oklahoma Insp. Bureau v. State Bd. for Property & Cas. Rates*, 1965 OK 147, ¶ 0, 406 P.2d 458 [Property & Casualty Rates Bd.].

11. Title 75 O.S.2011 § 250.4(B)(12), page 4, supra.

12. See discussion note 10, supra.