OSCN Found Document:DOE v. THE FIRST PRESBYTERIAN CHURCH U.S.A. OF TULSA

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 







 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 DOE v. THE FIRST PRESBYTERIAN CHURCH U.S.A. OF TULSA
2017 OK 106
Case Number: 115182
Decided: 12/19/2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 106, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

JOHN DOE (a pseudonym for the Plaintiff), Plaintiff/Appellant,
v.
THE FIRST PRESBYTERIAN CHURCH U.S.A. OF TULSA, OKLAHOMA, and JAMES D. MILLER, Defendants/Appellees.

ON APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
HONORABLE DAMAN H. CANTRELL DISTRICT JUDGE

¶0 Appellant filed suit against Appellees, a church and its minister, alleging torts and breach of contract after notice of his baptism was published on the internet. Appellant alleged he consented to baptism only after Appellees assured him his privacy would be maintained. Appellant alleged that Appellees' act of publishing the fact of his baptism to the world wide web resulted in his alleged kidnaping and subsequent torture by extremists while he traveled in Syria. The trial court sustained Appellees' motion to dismiss for lack of subject matter jurisdiction. Appellant appealed and this Court issued an Order granting Appellant's motion to retain this appeal.

REHEARING GRANTED; OPINION OF THE COURT ISSUED
FEBRUARY 22, 2017, IS WITHDRAWN AND THIS OPINION 
ORDERED SUBSTITUTED THEREFOR.

ORDER OF THE TRIAL COURT IS REVERSED 
AND REMANDED WITH INSTRUCTIONS.

G. Steven Stidham, Tulsa, Oklahoma, for Plaintiff/Appellant,

John H. Tucker and Denelda Richardson, Tulsa, Oklahoma, for Defendants/Appellees.

OPINION

WATT, J.:

¶1 This Court retained this case to consider whether a motion to dismiss for lack of subject matter jurisdiction can be granted where factual determinations are required by the trial court on issues that are central to the plaintiff's claims. The district court considered evidence outside plaintiff's petition and determined the publication of plaintiff's baptism on the world wide web was within the ecclesiastical realm of the Appellees' church hierarchy thereby depriving the trial court of subject matter jurisdiction. We reverse the district court's order and remand this matter for further proceedings.

FACTUAL AND PROCEDURAL HISTORY

¶2 Appellant/Doe filed suit against The First Presbyterian Church U.S.A. ("FPC"), of Tulsa, Oklahoma and its minister, James D. Miller, ("Appellees"), based on theories of torts and breach of contract. Doe seeks damages arising out of alleged harm he incurred from Appellees' publishing notice of his baptism on the world wide web. Doe claimed that he advised Appellees of the need to keep his baptism private and as confidential as possible. Doe asserted that Appellees assured him that his conversion to Christianity would be held as confidential as possible. Doe alleged that because of Appellees' assurances, he proceeded with baptism by Appellees. Stated differently, Doe's allegation emphasized that he did not give consent to the FPC to publicize his baptism.

¶3 Doe and Appellees agreed that Doe did not become a member of Appellees' church and Doe did not consent to membership. All parties agreed that Doe consented to baptism, however, Doe asserted his consent was conditioned on insuring his privacy concerns were honored by Appellees. Appellees urged that they had no knowledge of Doe's requests for confidentiality in baptism; and even if they had, church doctrine would have prohibited them from keeping matters private. The only record before us reflects that Doe simply (1) wanted to be baptized into the Christian faith, not to become a member of Appellees' church, and (2) only sought baptism if this process could be private and not publicized.

¶4 Doe was born in Syria and is of Muslim descent; he has permanent resident status in the United States. He has met all qualifications for citizenship and is waiting for the U.S. to schedule him to take the citizenship oath. While living in the United States, Doe became interested in converting to Christianity. Doe expressed concern about his safety if he became baptized. A FPC member, Mrs. Slick, sent a text to Doe and advised him:

"I will call my pastor today and let you know how we will PRIVATELY work this out. Nobody will find out. We will make sure that your secret is safe."

He was baptized by Miller in a non-televised service. The day after Doe's baptism, Appellees published notice of the baptism on the world wide web. When Doe traveled to Syria, he was kidnapped and held against his will with threats of being murdered for his conversion. Doe escaped, but alleged in so doing he killed one of his captors. Doe claimed that he suffered significant physical and emotional harm from his kidnapping and escape. Doe alleged that his captors learned of his conversion from the internet publication announcing he had been baptized at the FPC.

¶5 This matter comes before this Court on appeal from the district court's granting Appellees' Motion to Dismiss for Lack of Subject Matter Jurisdiction. This was Appellees' second attempt at a motion to dismiss.

First Motion to Dismiss for Failure to State a Claim

¶6 Appellees' urged in their first motion, that "all actions related to the baptism of Plaintiff are protected from judicial scrutiny under the Free Exercise Clause of the First Amendment of the U.S. Constitution." [1] In denying the first motion to dismiss, the trial court noted that the Appellees' act of publishing Doe's baptism on the world wide web "did not arguably occur as part of the baptismal service, nor has it been established that the publication of names of those that are baptized are part of the FPC's ecclesiastical practices."[2] The district court also noted:

While recordation of such names appears to be part of the FPC's standard procedure, publication of those names for the general public via the internet has not been established in the record as a required ecclesiastical practice of the FPC. Additionally, as the Plaintiff has never been a member of the FPC, it has not been established that the Plaintiff consented to submission to the ecclesiastical practices of the FPC beyond the actual baptism ceremony and service.[3]

It is undisputed that Doe did not become a member of the Appellee church. Appellees' initial motion to dismiss was denied by the trial court, noting that dismissals are disfavored by this Court;[4] and such motions are to be denied if a plaintiff's allegations contain any set of facts sufficient to support a cognizable legal theory. Rogers v. Quiktrip Corp., 2010 OK 3, 230 P.3d 855.

Second Motion to Dismiss for Lack of Subject Matter Jurisdiction

¶7 The appeal before this Court relates to the Second Motion to Dismiss, wherein Appellees asserted the district court lacked subject matter jurisdiction under 12 O.S. 2011, § 2012 (b) (1). Doe's response to this motion was titled, "Plaintiff's Response to Defendants' Motion for Summary Judgment".

¶8 Appellees' argument in the second motion to dismiss, consists of essentially two themes: (1) they disputed having knowledge of Doe's need for privacy or special considerations regarding baptism; and (2) the Presbyterian church doctrine mandates that information identifying those who have been baptized be made public. Appellees argued that publishing to the internet is so intertwined with the baptismal requirements as to render it part of the church doctrinal policy; therefore the church immunity doctrine, rooted in the guarantees of the First amendment, prohibits any secular court from making inquires into anything relating to baptism. Accordingly, Appellees asserted the district court lacked subject matter jurisdiction to hear Doe's claims.

¶9 Doe alleged that conversion from Islam to Christianity can carry the grave consequence of death, which is often done by beheading. Doe alleged that when he discussed his desire to convert to Christianity, he advised Appellees of the potentially fatal consequences he could incur for conversion. Doe also alleged that he repeatedly expressed to Appellees his need for a private and confidential baptism. Appellees also disputed they had knowledge of Doe's concerns regarding the potential dangers for a conversion. They further denied that Mrs. Slick's representation constituted notice to the Appellees or a promise of confidentiality. Appellees submitted the following additional evidence for the trial court to resolve disputed facts: (1) excerpts from the Presbyterian 'Book of Order,'[5] (2) affidavits from governing church officials, and (3) deposition testimony, in support of Appellees' assertion that church doctrine would have prevented FPC from honoring Doe's request.

¶10 Although Appellees' arguments and supporting exhibits are difficult to follow and lack defining clarity on this issue, it is not necessary for this Court to determine the Presbyterian Church (U.S.A.) doctrinal positions relating to baptism. The foundational inquiry is to discern exactly what Doe asked Appellees to do with respect to baptism, what Appellees agreed to perform for Doe, and ultimately the nature and extent of Doe's consent surrounding baptism. These fundamental factual inquiries to Doe's claims for relief are clearly disputed.

¶11 The trial court struggled with resolution of these very fact issues stating:

This Court does not hint at deciding whether something is sacramental, but rather must make a factual determination about the sincere representation of the Church as far as the sacramental nature of the act of baptism. Again, this has been a tricky issue to consider.

Order on Hearing Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, p. 7. (Emphasis added).

The district court also noted the following key points:

By admission of both parties, he did not ask to become a full member and otherwise be bound further by the numerous rules of the church and its denomination. Therefore, it could be assumed he may not have understood fully the requirements of baptism by the [FPC]. It is unclear to this Court if Plaintiff had been exposed to the detailed Constitution of the Presbyterian Church (U.S.A.), which includes a Book of Order. Still, his baptism placed him squarely under the rules the Defendants have had for baptism.

Order on Hearing Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, p. 6. (Emphasis added).

¶12 The findings made by the district court are pivotal to Doe's claims and inextricably intertwined with the issue of subject matter jurisdiction. Under these circumstances, Appellees' motion to dismiss for lack of subject matter jurisdiction should be treated as a motion for summary judgment. Osage Nation v. Board of Commissioners of Osage County, 2017 OK 34, 394 P.3d 1224. The trial court erred when it dismissed this matter finding it lacked subject matter jurisdiction.

Oklahoma District Courts Have Unlimited Jurisdiction Over 
All Justiciable Matters Unless Otherwise Provided by Law

¶13 We have previously recognized that the "state judiciary's subject matter jurisdiction is derived from the State Constitution which gives Oklahoma courts unlimited original jurisdiction over all justiciable matters unless otherwise provided by law." Reeds v. Walker, 2006 OK 43, ¶ 11, 157 P.3d 100, 107. By contrast, federal courts are courts of limited jurisdiction, and it is presumed that jurisdiction is lacking absent an adequate showing by the party invoking the federal court's jurisdiction. Id. The central theme of Appellees' second motion to dismiss is that the church autonomy doctrine deprives the district court of subject matter jurisdiction asserting that Doe's claims are rooted in the ecclesiastical practices of the church.

Motion to Dismiss For Lack of Subject Matter Jurisdiction to Motion for 
Summary Judgment And Consideration of Evidence Outside the Pleadings

¶14 A party is generally allowed to submit evidence outside the pleadings when making a challenge to the courts subject matter jurisdiction under 12 O.S. 2011, §2012 (b) (1), without converting the pleading into a motion for summary judgment. Osage Nation v. Bd. of Commissioners of Osage County and Osage Nation v. Osage County Bd. Of Adjustment, 2017 OK 34, ¶ 64, 394 P.3d 1224, 1245. But, when this additional disputed evidence relates to an element of the cause of action pled by a party, the motion to dismiss for lack of subject matter jurisdiction is converted to one for summary judgment. Id. at ¶ 64.[6] Under the Oklahoma pleading code, when evidence outside of the pleadings is attached to a motion to dismiss for failure to state a claim pursuant to 12 O.S. 2011 §2012 (b) (6), it is treated as a motion for summary judgment. This Court has routinely held where there are material disputed facts in a motion for summary judgment, the controversy at issue is not ripe for summary adjudication.[7]

¶15 In the matter before us, the trial court specifically stated it made a factual determination about the Appellees' "sincere representation" of the governing church body's policies regarding the sacramental nature of baptism. The trial court goes so far to say that Doe "may not have understood fully the requirements of baptism by [FPC]." Of equal concern, the trial court also noted that it was unclear if Doe had even been exposed to the requirements set out in the Book of Order, contained in the Constitution of the Presbyterian Church (U.S.A.). These type of factual considerations are essential components to Doe's claims for relief. As such, his motion to dismiss for lack of subject matter jurisdiction should have been treated as one for summary judgment. Because of the disputed material facts, this matter was not ripe for summary adjudication and for this reason alone, should be remanded back to the trial court.

Church Autonomy Doctrine History from United States Supreme Court 
and Oklahoma: Ecclesiastical Jurisdiction of a Church is Limited to 
Those Who Consent to Church Governance

¶16 It is a fundamental principle in this country that all people have the "full right to entertain any religious belief, to practice any religious principle, and to teach any religious doctrine which does not violate the laws of morality and property, and which does not infringe personal rights." Watson v. Jones, 80 US 679, 728 (1871). In this early opinion, SCOTUS explained it is unquestioned that religious institutions have a protected right to create tribunals to resolve controverted questions of faith and for "the ecclesiastical government of all the individual members, congregations and officers within the general association. However, this ecclesiastical jurisdiction is limited: those who "unite themselves to such a body, do so with the implied consent to this government. . .". Watson, 80 U.S. at 729.[8]

¶17 Watson involved a property dispute that arose between different factions within a certain Presbyterian church by an appointed internal tribunal. The SCOTUS found that the members had consented to the authority of the church and moreover that the church was part of a larger body within the Presbyterian church. Each church consented to the governance of the larger church. Because all were members within the church and the larger church organizational body and had consented to being part of this religious organization, the SCOTUS said secular courts should defer to the decision of the internal governing structure. The Watson decision was decided on common law grounds without explicit reliance on the First Amendment.

¶18 However, the pronouncements of Watson were further refined in Kedroff v. St. Nicholas Cathedral, where SCOTUS recognized the authority and autonomy of the church to be free from the secular control in matters of church government, faith and doctrine under the guarantees of the First Amendment to the U.S. Constitution. Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America, 344 U.S. 94, 115-116, 73 S.Ct. 143, 154-155, 97 L.Ed. 120. (1952). In this context, a church's freedom from secular control is solely based on membership in the church. Generally speaking, a church should be free from secular control and interference by state courts for claims against a church brought by a member who has agreed and consented to the ecclesiastical practices of the church. Id. This protection from secular courts as outlined by SCOTUS is directly tied to church membership and the consent of the member to enter under the control of the church.

¶19 This Court has refused to extend this application to shield a church from tort liability for claims brought by a plaintiff that arose after church membership ceased. Guinn v. Church of Christ of Collinsville, 1989 OK 8, 775 P.2d 768. We clearly recognized that a church may be shielded from tort liability for church sanctioned disciplinary actions taken against a "member." Id. However, this shield from liability evaporates for claims that arise after a member has separated from the church and is no longer a church member. Guinn made clear, the foundation for a church to be entitled to this level of protection is rooted in the pronouncements by the SCOTUS in Watson and Kedroff, outlining that ecclesiastical protection for a church arises solely from membership and the consent by the person to be governed by the church. Under Guinn, a church has no defense of ecclesiastical jurisdiction for a claim brought by a non-member like Doe, where it is undisputed, as noted by the district court that "by admission of both parties, [Doe] did not ask to become a full member and otherwise be bound further by the numerous rules of the church and its denomination"[9] 

¶20 We have very clearly outlined the profound constitutional underpinnings of this limited protection to a church. It is deeply rooted in our federal constitutional heritage. This Court recognized that "[w]hen people voluntarily join together in pursuit of spiritual fulfillment, the First Amendment requires that the government respect their decision and not impose its own ideas on the religious organization." Guinn, supra ¶ 21, 775 P.2d 774. We specifically recognized that the First Amendment allows individuals to "freely consent to being spiritually governed by an established set of ecclesiastical tenets defined and carried out by those chosen to interpret and impose them." Id. The key to the defense raised by Appellees stems from an agreement that arises between the church and the individual who has freely chosen to join in membership and agree and consent to that church's ecclesiastical jurisdiction. When that agreement occurs, "[a]ll who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it."[10]

¶21 In Guinn, we made clear that the church could defend its claims by the plaintiff for disciplinary actions brought against her while she was still a church member. However, we were unequivocal, "[j]ust as freedom to worship is protected by the First Amendment, so also is the liberty to recede from one's religious allegiance." Id at ¶ 27, 775 P.2d 776. We went further: "The First Amendment clearly safeguards the freedom to worship as well as the freedom not to worship." Id. In the record before us and as clearly outlined by the district court, Doe without question never became a member. Doe specifically made clear that he was not becoming a member of the Appellee's church. The record is void of any evidence that Doe ever consented to Appellees' ecclesiastical jurisdiction.

¶22 In a later decision, we again made clear that "the church has no power over those who live outside of the spiritual community." Hadnot v. Shaw, 1992 OK 21, ¶ 17, 826 P.2d 978, 988. We again recognized that the First Amendment protects the "jurisdiction of an ecclesiastical tribunal by the Free Exercise Clause's shield, [but] it also serves to protect the rights of an individual to worship or not to worship according to one's conscience." Id. In Hadnot we again considered the potential tort liability that could be imposed on a church by a member for disciplinary action taken against the member. Like in Guinn, there was a demarcated time when membership ceased. This Court without reservation recognized and honored the ecclesiastical jurisdiction of the Church for acts that arose during the time of membership. We likewise acknowledged that this defense is wholly tied to consent by the individual to the church's judicature which arises solely from membership.

¶23 

The Hadnot court unquestionably recognized that "when the church-member relationship is severed through an affirmative act either of a parishioner's withdrawal or of excommunication by the ecclesiastical body, a different situation arises." Hadnot, supra ¶ 19, 826 P.2d 989. Once membership ceases, from withdrawal or excommunication, "the absolute privilege from tort liability no longer attaches. Id. In the matter before this Court, all parties agree, as so forthrightly noted by the district court, Doe never consented to membership. The foundational underpinning of ecclesiastical jurisdiction, membership, is simply missing. The one requirement that was originally recognized by SCOTUS and provided the basis for this Court's recognition of this exception, is wholly absent in this matter.

The Church Autonomy Doctrine is an Affirmative Defense and 
does not deprive the Court of Subject Matter Jurisdiction

¶24 Further, the United States Supreme Court and the 10th Circuit Court of Appeals have recognized that the ministerial exception or the church autonomy doctrine, grounded in the Religion clause of the First Amendment, "operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar." Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C. , 565 U.S 171, 132 S.Ct. 694, 181 L.Ed.2d 650, fn. 4 (Emphasis added). Prior to Hosanna, there was a conflict among the federal circuit courts over whether the ministerial exception and the church autonomy doctrine should be treated as a jurisdictional bar or as a defense on the merits.[11] The SCOTUS noted that "the issue presented by the exception is 'whether the allegations the plaintiff makes entitle him to relief,' not whether the court has 'power to hear [the] case.'" Id. at fn. 4, (internal citation omitted).

¶25 All parties agree Doe simply asked for baptism, but never to become a member subject to the Appellees' ecclesiastical hierarchy. Without this consent, Doe's religious freedom to not subject himself to the Appellees' judicature must be respected and honored under the longstanding and clear constitutional decisions from our Court and the Supreme Court of the United States. What Doe consented to and what the FPC communicated to Doe must be determined as a foundational inquiry regarding Doe's claims.

¶26 It was error for the district court to conclude that it had no subject matter jurisdiction to hear Doe's claims on the basis of ecclesiastical jurisdiction. The record below is replete with contested issues of fact which must be resolved by the trier of fact in an adversarial hearing below. This matter is hereby remanded back to the trial court for proceedings consistent with this decision.

DISTRICT COURT'S JUDGMENT REVERSED;
AND MATTER REMANDED FOR FURTHER PROCEEDINGS

Gurich, V.C.J., Kauger, Watt, Edmondson, Colbert, JJ. - Concur

Combs, C.J. (by separate writing), Winchester, (by separate writing), Reif (by separate writing), Wyrick, JJ. - Dissent

FOOTNOTES

[1] Doe v. The First Presbyterian Church U.S.A. of Tulsa, Oklahoma and James D. Miller, CJ 2014-02210, Tulsa County District Court, Opinion and Order on Motion to Dismiss, October 24, 2014.

[2] Doe v. The First Presbyterian Church U.S.A. of Tulsa, Oklahoma and James D. Miller, CJ 2014-02210, Tulsa County District Court, Opinion and Order on Motion to Dismiss, October 24, 2014. (Emphasis added).

[3] Doe v. The First Presbyterian Church U.S.A. of Tulsa, Oklahoma and James D. Miller, CJ 2014-02210, Tulsa County District Court, Opinion and Order on Motion to Dismiss, October 24, 2014, (Emphasis added).

[4] Doe v. The First Presbyterian Church U.S.A. of Tulsa, Oklahoma and James D. Miller, CJ 2014-02210, Tulsa County District Court, Opinion and Order on Motion to Dismiss, filed October 24, 2014, denying the Appellees' motion the court stated: "In the present case, the acts by the Defendants that are central to the Plaintiff's claims did not arguably occur as part of the baptismal service, nor has it been established that the publication of names of those that are baptized are part of FPC's ecclesiastical practices. While recordation of such names appears to be part of the FPC's standard procedure, publication of those names for the general public via the internet has not been established in the record as a required ecclesiastical practice of the FPC. Additionally, as the Plaintiff has never been a member of the FPC, it has not been established that the Plaintiff consented to submission to the ecclesiastical practices of the FPC beyond the actual baptism ceremony and service."

[5] The Book of Order is a governing document of the Presbyterian Church (U.S.A.), and it is designated as Part 2 of its governing Constitution.

[6] Also see, Pringle v. U.S., 208 F.3d 1220, 1223, (10th Cir., 2000), Roman Catholic Diocese of Jackson v. Morrison, 905 So.2d 1213, (Miss., 2005), when the resolution of the jurisdictional question requires resolution of an aspect of the substantive claim, courts are required to convert a motion to dismiss for subject matter jurisdiction into a motion to dismiss for failure to state a claim or a motion for summary judgment.

[7] Malson v. Palmer Broadcasting, 1997 OK 42 ¶ 11, 936 P.2d 940, 942.

[8] The Court specifically stated:

All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for.

Nor do we see that justice would be likely to be promoted by submitting those decisions to review in the ordinary judicial tribunals. Each of these large and influential bodies (to mention no others, let reference be had to the Protestant Episcopal, the Methodist Episcopal, and the Presbyterian churches), has a body of constitutional and ecclesiastical law of its own, to be found in their written organic laws, their books of discipline, in their collections of precedents, in their usage and customs, which as to each constitute a system of ecclesiastical law and religious faith that tasks the ablest minds to become familiar with. It is not to be supposed that the judges of the civil courts can be as competent in the ecclesiastical law and religious faith of all these bodies as the ablest men in each are in reference to their own. Watson, 80 U.S. at 729.

[9] Order on Hearing Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, p. 6. (Emphasis added).

[10] Guinn, supra ¶ 21, 775 P.2d 774, citing Watson v. Jones, supra 80 U.S. at 728-729.

[11] See, Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648 (2002), finding defendant's argument that the church autonomy doctrine deprived the court of subject matter jurisdiction under 12 (b) (1) is more appropriately treated as a challenge to the sufficiency of the plaintiffs' claims, under 12 (b) (6). Because the defendants in Bryce presented outside evidence, the motion to dismiss for failure to state a claim was instead treated as a motion for summary judgment. See also, Skrzypczak v. Roman Catholic Diocese of Tulsa, 611 F.3d 1238 (2010), noting that the ministerial exception, much like the broader church autonomy doctrine may bar the success of a plaintiff's claims but neither doctrine affects the court's jurisdiction to hear the claims.

 

 

COMBS, C.J., with whom Winchester and Reif, JJ., join, dissenting:

¶1 For the following reasons, I disagree with the majority's decision to grant rehearing in this matter and issue a substitute opinion: 1) the requirements for rehearing have not been met; 2) the trial court properly granted Appellees' motion to dismiss for lack of subject matter jurisdiction, the conversion of which was not required; and 3) John Doe's lack of membership in First Presbyterian Church U.S.A. of Tulsa, Oklahoma, does not bar application of the church autonomy doctrine in this matter. Respectfully, I must dissent.

I.

THE REQUIREMENTS FOR REHEARING HAVE NOT BEEN SATISFIED

¶2 Generally, this Court grants rehearing: 1) to correct an error or omission; 2) to address an unresolved jurisdictional issue; or 3) to clarify the opinion. Tomahawk Resources, Inc. v. Craven, 2005 OK 82, Supp. Op. ¶1, 130 P.3d 222. Rehearing is not for rearguing a question which has been previously presented and fully considered by this Court. Craven, 2005 OK 82, Supp. Op. at ¶1. See Draper v. State, 1980 OK 117, Supp. Op. ¶¶1-2, 621 P.2d 1142. Likewise, rehearing is not for presenting points which the losing party overlooked, misapprehended, or failed to fully address. Craven, 2005 OK 82, Supp Op. at ¶1.

¶3 Appellant's Petition for Rehearing does not seek to correct an unresolved jurisdictional issue or clarify the opinion, nor does it allege a concrete legal error distinct from this Court's overall interpretation and application of the church autonomy doctrine. All issues raised in the petition for rehearing, as well as those considered by the Court sua sponte in its substituted opinion on rehearing, were addressed by this Court's prior opinion in a manner that was not erroneous.

II.

THE CHURCH AUTONOMY DOCTRINE AND MINISTERIAL EXCEPTION ARE NOT SYNONYMOUS, AND THE FORMER
CONTINUES TO ACT AS A BAR TO SUBJECT MATTER
JURISDICTION NOTWITHSTANDING THE DECISION OF THE 
SUPREME COURT OF THE UNITED STATES IN HOSANNA-TABOR
EVANGELICAL LUTHERAN CHURCH AND SCHOOL V. E.E.O.C., 565 U.S.
171, 132 S.CT. 694, 181 L.ED.2D 650 (2012).

¶4 In its original opinion in this matter, this Court concluded that the church autonomy doctrine is properly considered as a challenge to the subject matter jurisdiction of the secular Courts. Subject matter jurisdiction is the power and authority of a court to hear and determine causes of the kind in question, and to grant the relief sought. Okla. Dept. of Securities ex. rel. Faught v. Blair, 2010 OK 16, ¶19, 231 P.3d 645; In re A.N.O., 2004 OK 33, ¶9, 91 P.3d 646. As the majority correctly notes, the state judiciary's subject matter jurisdiction is derived from the Oklahoma Constitution which gives Oklahoma courts unlimited original jurisdiction over all justiciable matters unless otherwise provided by law. Reeds v. Walker, 2006 OK 43, ¶11, 157 P.3d 100. However, a bar to state court subject matter jurisdiction based on the church autonomy doctrine, rooted as it is in U.S. Const. amend. I, qualifies under "unless otherwise provided by law." See Reeds, 2006 OK 43 at ¶11; U.S. Const. art. VI, cl. 2.[1]

¶5 This Court's prior decisions concerning the church autonomy doctrine, including those relied upon by the majority in the substitute opinion, support the notion that disputes properly covered by the church autonomy doctrine are outside of the power of the civil courts to consider because the doctrine operates as a bar to subject matter jurisdiction. See Bladen v. First Presbyterian Church of Sallisaw, 1993 OK 105, ¶28, 857 P.2d 789 ("The type of counseling (or its absence) a particular sect or denomination chooses to select and provide for its adherents in response to a minister having an affair with a parishioner is a matter of ecclesiastical concern, and not within the jurisdiction of a civil court to prescribe.") (emphasis added); Fowler v. Bailey, 1992 OK 160, ¶7 844 P.2d 141 (recognizing the courts have no jurisdiction over ecclesiastical matters and "ecclesiastical relief is beyond the power of a civil court."); Hadnot v. Shaw, 1992 OK 21, ¶28, 826 P.2d 978 ("When the target of civil litigation is simply the church's implementation of its valid ecclesiastical judicature, the Free Exercise Clause of the First Amendment will afford a shield from interference by secular inquest."); Guinn v. Church of Christ of Collinsville, 1989 OK 8, ¶¶17-18, 775 P.2d 766 (doctrinal disputes properly covered by the church autonomy doctrine are outside the purview of civil judicature).

¶6 The majority relies upon the decision of the Supreme Court of the United States in Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C., for the proposition that the church autonomy doctrine operates as an affirmative defense to an otherwise cognizable claim and is therefore not a jurisdictional bar. 565 U.S. 171, 195 n.4, 132 S.Ct. 694, 709, 181 L.Ed.2d 650 (2012). However, the majority's reliance on Hosanna-Tabor is incorrect because it conflates the church autonomy doctrine with the ministerial exception, which are distinct in certain ways.[2]

¶7 In Hosanna-Tabor, the Court revisited what is often called the "ministerial exception," the idea that it is impermissible for the Courts to challenge a church's determination of who can act as its ministers, even when such causes of action would otherwise be permitted by federal law. 565 U.S. at 185, 132 S.Ct. at 704.[3] In footnote 4 of Hosanna-Tabor, the Court resolved a conflict between the United States Courts of Appeals concerning whether the ministerial exception serves as a jurisdictional bar or merely as an affirmative defense to an otherwise cognizable claim. 565 U.S. at 195 n.4, 132 S.Ct. at 709. However, in contrast to the majority's claims in the substituted opinion of this Court, the Hosanna-Tabor Court did not extend its determination on subject matter jurisdiction beyond the ministerial exception to the broader church autonomy doctrine. Specifically, the Supreme Court stated:

A conflict has arisen in the Courts of Appeals over whether the ministerial exception is a jurisdictional bar or a defense on the merits.... District courts have power to consider ADA claims in cases of this sort, and to decide whether the claim can proceed or is instead barred by the ministerial exception.

Hosanna-Tabor, 565 U.S. at 195 n.4, 132 S.Ct. at 709.

¶8 This distinction is important, and has been noted by several courts in other jurisdictions since Hosanna-Tabor was decided. For example, this issue was considered directly by the Supreme Court of Tennessee in Church of God in Christ, Inc. v. L. M. Haley Ministries, Inc., --- S.W.3d. ----, 2017 WL 4183065 (Tenn. 2017) (rehearing denied October 10, 2017). Recognizing the important differences between the church autonomy doctrine[4] and the ministerial exception, the Supreme Court of Tennessee determined Hosanna-Tabor was not applicable, and where the church autonomy doctrine applies it functions as a bar to subject matter jurisdiction. Church of God in Christ, Inc. at *7-8.

¶9 The court noted that, like the ministerial exception, the church autonomy doctrine derives from the Religion Clauses of the First Amendment to the United States Constitution but is far older. Church of God in Christ, Inc. at *7. Compare Watson v. Jones, 80 U.S. 679, 733, 20 L.Ed. 666 (1871) (recognizing the church autonomy doctrine in 1871) with Hosanna-Tabor, 565 U.S. at 188, 132 S.Ct. at 705 (noting the ministerial exception has been recognized since the passage of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.). The court's analysis is worth providing in detail:

[T]he Supreme Court did not address the ecclesiastical abstention doctrine in Hosanna--Tabor.... The Supreme Court itself has described the ecclesiastical abstention doctrine in a manner that suggests it constitutes a subject matter jurisdictional bar, where applicable. Specifically, the Supreme Court stated that civil courts exercise "no jurisdiction" over a matter "strictly and purely ecclesiastical in its character." Watson, 80 U.S. at 733. The Supreme Court defined ecclesiastical disputes as matters concerning "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them." Id. at 733; see also Serbian E. Orthodox Diocese for U.S. and Can. v. Milivojevich, 426 U.S. 696, 713-14, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976) (quoting Watson, 80 U.S. at 733).

....

No language in Hosanna--Tabor alters the well-established principle stated in Watson that civil courts have no jurisdiction over matters purely ecclesiastical in character. In the absence of any express language overruling Watson, and given that Hosanna--Tabor cites Watson with approval, we decline to interpret Hosanna-Tabor as abrogating Watson's characterization of the ecclesiastical abstention doctrine as a subject matter jurisdictional bar. Hosanna--Tabor, 565 U.S. at 186-87, 132 S.Ct. 694. We therefore hold that, until and unless the United States Supreme Court declares otherwise, the ecclesiastical abstention doctrine, where it applies, functions as a subject matter jurisdictional bar that precludes civil courts from adjudicating disputes that are "strictly and purely ecclesiastical" in character and which concern "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them." Watson, 80 U.S. at 733. As such, the ecclesiastical abstention doctrine may be raised at any time as a basis for dismissal of a lawsuit.

Church of God in Christ, Inc. at *7-8.

¶10 Tennessee is not the only jurisdiction to reach this conclusion. See Wipf v. Hutterville Hutterian Brethern, Inc., 808 N.W.2d 678, 682 (S.D. 2012) (citing Hosanna-Tabor, but holding church autonomy doctrine remained a question of subject matter jurisdiction); Kirby v. Lexington Theological Seminary, 426 S.W.3d 597, 608 (Ky. 2014) (holding the ministerial exception is an affirmative defense, but is often conflated with the church autonomy doctrine which remains a jurisdictional bar); Flynn v. Estevez, 221 So.3d 1241 (Fla. Dist. Ct. App. 2017) (holding the church autonomy doctrine continues to serve as a jurisdictional bar in Florida, while citing Hosanna-Tabor with regard to the ministerial exception).

¶11 Lower federal courts have also considered the same question. The United States District Court for the District of Columbia held in Gregorio v. Hoover, 238 F.Supp.3d 37, 45-46 (D. D.C. 2017) (emphasis added):

Although both of these doctrines can warrant dismissal of claims on First Amendment grounds, the ministerial exception "operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar." Hosanna--Tabor Evangelical Lutheran Church & Sch. v. EEOC, 565 U.S. 171, 195 n.4, 132 S.Ct. 694, 181 L.Ed.2d 650 (2012). Accordingly, defendants' ministerial exception arguments are properly analyzed under a Rule 12(b)(6), rather than a Rule 12(b)(1), lens. See Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 171 (5th Cir. 2012). However, without definitive guidance otherwise from the Supreme Court or the D.C. Circuit, the Court will analyze defendants' arguments under the ecclesiastical abstention doctrine--which is "related" to but "distinct" from the ministerial exception, see Kavanagh v. Zwilling, 997 F.Supp.2d 241, 248 n.7 (S.D.N.Y. 2014)--under a Rule 12(b)(1) lens, as that approach is consistent with the long-standing practice of treating questions of ecclesiastical entanglement as jurisdictional. See id.

See also Kavanagh v. Zwilling, 997 F.Supp.2d 241, 248 n.7 (D. S.D. 2014) (holding the church autonomy doctrine's status as a jurisdictional bar or affirmative defense is unclear after Hosanna-Tabor, but the question has been considered jurisdictional by most district courts).

¶12 The majority's conflation of the broader and older church autonomy doctrine with the ministerial exception and determination that the church autonomy doctrine is an affirmative defense is incorrect in light of: 1) this Court's long-standing treatment of the church autonomy doctrine as a jurisdictional issue; 2) the limited nature of Hosanna-Tabor; 3) Hosanna-Tabor's failure to expressly overrule Watson's determination that the church autonomy doctrine implicates jurisdiction; and 4) decisions of numerous other jurisdictions noting the limitations of Hosanna-Tabor.

III.

APPELLEES' MOTION TO DISMISS FOR LACK OF SUBJECT
MATTER JURISDICTION IS PROPER AND SHOULD NOT BE
TREATED AS A MOTION FOR SUMMARY JUDGMENT.

¶13 As discussed in Part II, supra, the application of the church autonomy doctrine implicates the jurisdiction of the civil courts. Appellees' motion to dismiss for lack of subject jurisdiction filed pursuant to 12 O.S. 2011 § 2012(B)(1) was therefore proper. The majority, however, incorrectly asserts it should be converted to a motion for summary judgment due to Appellees' attachment of evidentiary materials. As the majority correctly notes, attachment of evidentiary materials does not generally require conversion of a motion to dismiss for lack of jurisdiction into a motion for summary judgment. Osage Nation v. Bd. of Comm'rs of Osage County and Osage Nation v. Osage County Bd. of Adjustment, 2017 OK 34, ¶64, 394 P.3d 1224; State ex rel. Bd. of Regents of Univ. of Okla. v. Lucas, 2013 OK 14, ¶¶9-10 nn.9-10, 297 P.3d 378. However, conversion may be required based on the purpose and nature of the evidentiary materials submitted: when the facts are used to show a lack of jurisdiction conversion is unnecessary, but when the facts are part of an element to the cause of action pled by a party or a defense thereto, the motion should be converted to one for summary judgment. Osage Nation, 2017 OK 34 at ¶64; Lucas, 2013 OK 14 at ¶9 n.9; Powers v. Dist. Ct. of Tulsa County, 2009 OK 91, ¶6, 227 P.3d 1060.[5]

¶14 As the United States Court of Appeals for the Tenth Circuit has explained: "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'" Davis ex rel. Davis v. U.S., 343 F.3d 1282, 1296 (10th Cir. 2003) (quoting Sizova v. Nat'l Inst. Of Standards and Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)). See Lucas, 2013 OK 14 at ¶8 ("Federal courts have explained that a jurisdictional issue is intertwined with the merits when the subject matter jurisdiction is dependent upon a [sic] issue that is also an element to the merits of the cause of action, and the adjudication of the jurisdictional issue necessarily adjudicates a cause of action or defense thereto").

¶15 Contrary to the majority's assertion, the situation this Court is presented with is the opposite of the rule noted above. The resolution of the jurisdictional question presented in this cause-whether a dispute over the performance of the sacrament of baptism constitutes a dispute about discipline, faith, internal organization, or ecclesiastical rule, custom, or law that would entangle the courts in violation of the church autonomy doctrine-is a threshold question that must be answered prior to any consideration of the merits of John Doe's claims that Appellees' promised him they would perform the sacrament in a certain way and then failed to deliver. To put it differently, there is no way to resolve the merits of John Doe's claims without first delving into questions of what the sacrament of baptism requires within the Presbyterian faith and whether the requirements could have or should have been altered to accomodate John Doe's request. In contrast, the trial court's order and this Court's initial opinion properly considered the submitted evidentiary materials for the purpose of determining if the church autonomy doctrine should apply-i.e., is there a jurisdictional issue because John Doe's claims necessitate court involvement in matters of faith and doctrine.

¶16 The jurisdictional issue in this matter does not require resolution of John Doe's substantive claims against Appellees. Appellees' motion to dismiss for lack of subject matter jurisdiction should not be treated as a motion for summary judgment. See Davis ex rel. Davis, 343 F.3d at 1296; Lucas, 2013 OK 14 at ¶8.

IV.

JOHN DOE'S STATUS AS A NONMEMBER OF THE FIRST
PRESBYTERIAN CHURCH OF U.S.A. OF TULSA, OKLAHOMA, DOES
NOT PREVENT APPLICATION OF THE CHURCH AUTONOMY 
DOCTRINE IN THIS CAUSE.

¶17 John Doe is not a member of the First Presbyterian Church of U.S.A. of Tulsa, Oklahoma, and never intended to become one. The parties agree on this issue. The majority uses this point as the foundation for its determination that the church autonomy doctrine is inapplicable in this matter, and discusses a long line of cases noting voluntary membership in a religious community is a foundational underpinning of the jurisdiction of ecclesiastical tribunals. See Watson v. Jones, 80 U.S. 679, 20 L.Ed. 666 (1871); Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America, 344 U.S. 94, 115-116, 73 S.Ct. 143, 154-55, 97 L.Ed. 120 (1952); Hadnot v. Shaw, 1992 OK 21, ¶17, 826 P.2d 978; Guinn v. Church of Christ of Collinsville, 1989 OK 8, 775 P.2d 768.

¶18 Insofar as many religious autonomy cases-and most of the ones previously considered by this Court-concern the actions of church disciplinary authorities or tribunals against congregation members, the majority's point is valid. However, disputes between churches and members, especially in a disciplinary context, are only a subset of the situations in which the broader church autonomy doctrine may attach. Membership in a church is not the issue. The issue, especially where claims that sound in tort and breach of contract are concerned, is whether the underlying dispute is a secular one, capable of review by a civil court, or an ecclesiastical one about discipline, faith, internal organization, or ecclesiastical rule, custom or law. Bell v. Presbyterian Church (U.S.A.), 126 F.3d 328, 331 (4th Cir. 1997). See Puri v. Khalsa, 844 F.3d 1152, 1164 (9th Cir. 2017). States are free to adopt various approaches for settling disputes involving religious entities, so long as they involve no consideration of doctrinal matters, whether the ritual and liturgy of worship or the tenets of faith. Jones v. Wolf, 443 U.S. 595, 602, 99 S.Ct. 3020, 3025, 61 L.Ed.2d 775. When it is not possible to resolve such a dispute without consideration of doctrinal matters, even a seemingly secular dispute, the church autonomy doctrine is necessarily implicated. See Puri, 844 F.3d at 1165-67 (noting a preference that neutral principles be used to enforce secular rights where possible). The protections of the church autonomy doctrine do not apply only to disputes between religious institutions and their members, because the focus of the doctrine is on the nature of the controversy and how entangled it is with doctrinal issues, not on the relationship between the parties.

¶19 Since this Court has never been faced with a situation quite like this before, the decisions of other courts are illustrative. For example, the Tenth Circuit Court of Appeals in Bryce v. Episcopal Church in the Diocese of Colorado correctly noted that the doctrine is broader than merely providing protection for the decisions of ecclesiastical tribunals, and pointedly applied it to claims made by a non-member:

Plaintiff Smith contends that, unlike Bryce, she had no relationship with St. Aidan's and must be considered a third party who is not subject to internal church disciplinary procedures. This argument misses the mark.

The church autonomy doctrine is rooted in protection of the First Amendment rights of the church to discuss church doctrine and policy freely. The applicability of the doctrine does not focus upon the relationship between the church and Rev. Smith. It focuses instead on the right of the church to engage freely in ecclesiastical discussions with members and non-members. Rev. Smith voluntarily attended the four meetings and voluntarily became part of St. Aidan's internal dialogue on homosexuality and Bryce's employment.

289 F.3d 648, 658 (10th Cir. 2002) (emphasis added).

¶20 At the state level, the Court of Appeals of Kansas considered the question of consent and the church autonomy doctrine in a situation with some marked similarities to this one. Purdum v. Purdum, 301 P.3d 718 (Kan. Ct. App. 2013). In Purdum, the court considered a defamation suit made by an ex-husband against his ex-wife for statements made as part of a petition for the religious annulment of their marriage. 301 P.3d at 720. In that cause, the question of consent to the defamatory statements, made as part of the religious process, was considered by the court, which noted:

As stated previously, Harcsar's petition for annulment is inextricably part of the Archdiocesan Tribunal. Purdum's suit would require discovery and depositions of employees of the Archdiocese and would require the civil courts to interpret canon law concerning Harcsar's consent defense. For instance, the consent to submit to the discipline or authority of the church, sect, or congregation is one of contract; therefore, it is between the person who has given his or her consent and the religious body. Rosicrucian Fellow. v. Rosicrucian Etc. Ch., 39 Cal.2d 121, 132, 245 P.2d 481 (1952). Determining whether Harcsar's consent defense is valid and proper would clearly involve the courts in questions of religious doctrine. Thus, adjudication of Harcsar's consent defense would entail judicial intrusion into a matter that the Catholic Church is entitled to decide, free from government intrusion. There is no doubt that the First Amendment offers no protection to religious worshipers who make slanderous or libelous statements outside ecclesiastical tribunals, but that is not the case here.

Harcsar asked for an annulment in a church forum as part of a church-approved, church-defined, and church-controlled process where the church would determine the validity of the church's marriage sacrament.

Purdum, 301 P.3d at 727.

The court felt it necessary to emphasize the point even more strongly:

Moreover, how can the civil courts--and perhaps a jury--consider Harcsar's consent defense without entangling itself in the details of the administration and procedures of the Archdiocese's annulment proceedings? Indeed, Harcsar's consent defense would require the civil courts to interpret canon law. This is the sort of entanglement that the Establishment Clause forbids.

Purdum, 301 P.3d at 727-28.

The end result was the Purdum court determining it lacked subject matter jurisdiction over the matter pursuant to the church autonomy doctrine. 301 P.3d at 728.

¶21 This Court is faced with a similar problem to that confronted by the Purdum court. Contrary to the majority's assertion, issues surrounding exactly what John Doe consented to as far as the details of baptism do not bar application of the church autonomy doctrine, but instead require its application. John Doe unquestionably asked Appellees' to baptize him into the Christian faith. He went to the church of his own volition, driven by his own faith, and was baptized in front of the congregation. His civil claims all stem from Appellees' allegedly not performing this religious sacrament in the manner he asked for, with Appellees' responding that due to faith and doctrine they were unable to perform it any other way. There is no way for a civil court to resolve John Doe's claims without involving itself deeply and impermissibly in how John Doe's baptism was performed and should have been performed; a "church-approved, church-defined, and church-controlled process" that the church must determine the parameters of for reasons of faith.

CONCLUSION

¶22 The trial court properly granted Appellees' motion to dismiss for lack of subject matter jurisdiction, which does not require conversion into a motion for summary judgment. By requesting Appellees baptize him and submitting to the same, John Doe subjected himself to Appellees' requirements for baptism, regardless of his lack of membership in the congregation itself. The church autonomy doctrine operates to bar the civil courts from considering John Doe's claims because those claims all derive from how his baptism was performed and publicized. Any consideration of John Doe's claims on the merits would require the trial court to analyze and determine: 1) the requirements for baptism in the Presbyterian Church; 2) how those requirements applied specifically to John Doe's baptism; and 3) whether the Appellee's should be civilly liable to John Doe for not performing his baptism in the manner he desired, despite their assertions their faith would not permit another result. These questions are ones of faith and doctrine, and squarely within the protection of the church autonomy doctrine. Kedroff, 344 U.S. at 116; Bryce, 289 F.3d at 655. "A secular court may not ... adjudicate matters that necessarily require it to decide among competing interpretations of church doctrine, or other matters of an essentially ecclesiastical nature, even if they also touch upon secular rights." Bollard v. California Province of the Society of Jesus, 196 F.3d 940, 946 (9th Cir. 1999).

¶23 The issues raised by the Petition for Rehearing, and the separate issues reexamined sua sponte by the majority in its substituted opinion on rehearing, were fully considered and dealt with in this Court's original opinion, in a manner that was not erroneous. The requirements for granting rehearing in this matter have not been satisfied. See Craven, 2005 OK 82 Supp. Op. at ¶1. Accordingly, I dissent to the decision to grant rehearing in this matter and to the substituted opinion of the majority.

FOOTNOTES

[1] U.S. Const. art. VI, cl. 2 provides:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

[2] The distinction between the two concepts was not emphasized in this Court's original opinion in this cause because the present matter concerns only the church autonomy doctrine, the older and broader of the two. See discussion, infra.

[3] Hence the use of the term "exception." The ministerial exception, specifically, is an exception to the application of legislation like the Civil Rights Act of 1964 and other employment discrimination laws. Hosanna-Tabor, 565 U.S. at 188, 132 S.Ct. at 705.

[4] The Supreme Court of Tennessee uses the term "ecclesiastical abstention doctrine," but notes it is also commonly known as the church autonomy doctrine. Church of God in Christ, Inc. at *7.

[5] As explained in Section II, supra, the church autonomy doctrine is properly considered as a jurisdictional challenge and not as a defense to a plaintiff's claims, in contrast to the ministerial exception.

 

 

WINCHESTER, J., dissenting:

¶1 I join the dissent by the Chief Justice, and add my own observations to this matter. The majority opinion holds that because the defendant church published the fact of the plaintiff's Christian baptism on the World Wide Web, the church is forced to continue to defend a lawsuit and potentially be held responsible for criminal acts, specifically, his alleged kidnapping and torture, committed by third parties in a foreign country against the plaintiff. Our courts recognize a well-established principle of the First Amendment of the Constitution of the United States that the right to free exercise of religion includes the right to be free from governmental intervention unless a contravening compelling state interest in regulation is shown to exist. Whitehorn v. State, 1977 OK CR 65, ¶ 23, 561 P.2d 539, 544 (1977), citing Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). Certainly subjecting the defendants to state court action is governmental intervention.

¶2 I would deny the motion to rehear this case. The majority opinion opines that this motion to dismiss for lack of subject matter jurisdiction should be treated as one for summary judgment. Then the majority opinion should do so. The 10th Circuit has done just that in Skrzypczak v. Roman Catholic Diocese of Tulsa, 611 F.3d 1238 (10th Cir. 2010).

¶3 In the Appellant's Petition for Rehearing he alleges that all of the defendants were aware of the danger of his being murdered by extremists and pledged strict confidentiality; that the appellees were aware the appellant was traveling to an ISIS stronghold in Syria immediately after his baptism; that he was assured that his baptism would be private; and that the appellees chose to publicize the appellant's baptism through the World Wide Web, ensuring its greatest possible distribution and publication.

¶4 Mr. Doe searched out this church, and requested to be baptized, but insisted he would not be a member of that church. So, the baptism was done as a favor to Mr. Doe. There appears to be no direct legal benefit to the church. The act was simply a voluntary act of compassion by the minister. I fail to see how a breach of contract could occur when there is no consideration. 12 O.S.2011, § 2(4).

¶5 Additionally, I do not see how a tort could have occurred, when the plaintiff had a clear opportunity to avoid a risk that he knew was present. There is no contest of the fact he knew going back to Syria after becoming a Christian would be a great risk to him. He voluntarily exposed himself to the direct cause of his injury with the knowledge and appreciation of the danger and the risk involved.

¶6 Accordingly, Mr. Doe's motion for rehearing should be denied.

 

 

REIF, J., dissenting

¶1 John Doe seeks to hold the Presbyterian Church liable for harm that was perpetrated against him by the independent acts of third parties who oppose Christian teachings. He contends the Church is liable because it posted news of his baptism on the internet when he did not want that information disclosed. To be sure, the law does protect and enforce the confidentiality of religious communications "made privately and not intended for further disclosure." 12 O.S.2011, § 2505. However, John Doe's baptism was an act, not a communication, and sharing news of this act is part of the religious doctrine of the Presbyterian Church. If a societal need does exist to keep conversion to a religious faith confidential, it would be more appropriate for the Legislature to address this subject by general legislation like § 2505, rather than for this Court to create a new cause of action in response to extraordinary facts.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1977 OK CR 65, 561 P.2d 539, WHITEHORN v. STATE
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1989 OK 8, 775 P.2d 766, 60 OBJ 144, Guinn v. Church of Christ of Collinsville
Discussed at Length
 1992 OK 21, 826 P.2d 978, 63 OBJ 442, Hadnot v. Shaw
Discussed at Length
 1992 OK 160, 844 P.2d 141, 63 OBJ 3648, Fowler v. Bailey
Discussed
 1993 OK 105, 857 P.2d 789, 64 OBJ 2320, Bladen v. First Presbyterian Church of Sallisaw
Discussed
 1997 OK 42, 936 P.2d 940, 68 OBJ 1454, Malson v. Palmer Broadcasting Group
Discussed
 2004 OK 33, 91 P.3d 646, IN RE: A.N.O., A MINOR CHILD
Discussed
 2005 OK 82, 130 P.3d 222, TOMAHAWK RESOURCES, INC. v. CRAVEN
Discussed at Length
 2006 OK 43, 157 P.3d 100, REEDS v. WALKER
Discussed at Length
 2009 OK 91, 227 P.3d 1060, POWERS v. DISTRICT COURT OF TULSA COUNTY
Discussed
 2010 OK 3, 230 P.3d 853, ROGERS v. QUIKTRIP CORP.
Cited
 2010 OK 16, 231 P.3d 645, DEPT. OF SECURITIES ex rel. FAUGHT v. BLAIR
Discussed
 2013 OK 14, 297 P.3d 378, STATE ex rel. BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA v. LUCAS
Discussed at Length
 2017 OK 34, 394 P.3d 1224, OSAGE NATION v. BD. OF COMMISSIONERS OF OSAGE COUNTY and OSAGE NATION v. OSAGE COUNTY BD. OF ADJUSTMENT
Discussed at Length
 1980 OK 117, 621 P.2d 1142, Draper v. State
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2, Common Law to Remain in Force in Aid of General Statutes
Cited
 12 O.S. 2012, Defenses and Objections - When and How Presented - By Pleading or Motion
Discussed at Length
 12 O.S. 2505, Religious Privilege
Cited